GILL SPERLEIN (172887)
THE LAW FIRM OF GILL SPERLEIN
584 Castro Street, Suite 849
San Francisco, California 94114
Telephone: (415) 487-1211 X32
Facsimile: (415) 252-7747
legal@titanmedia.com

Attorney for Plaintiff
IO GROUP, INC.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IO GROUP, INC. v. VEOH NETWORKS, a California corporation | CASE NO. C-06-3926 (HRL) |
| IO GROUP, INC. v. DATA CONVERSIONS, INC., a South Carolina corporation d/b/a AEBN and pornotube.com | CASE NO. C-06-5162 (HRL) |
| IO GROUP, INC. v. WEBNOVAS TECHNOLOGIES, INC., a Canadian business entity type unknown, and GONETMARKET, INC., a Nevada Corporation | CASE NO. C-06-5334 (JSW) **PLAINTIFF IO GROUP, INC.'S REPLY TO VEOH NETWORK INC.'S OPPOSITION TO PLAINTIFF'S ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED** |

Veoh argues that these cases should not be related because the websites are fundamentally different in two regards. Veoh argues that its website is different from those of the other defendants because Veoh does not review each video before reformatting it and publishing it on veoh.com and because Veoh does not advertise on the website or otherwise profit from the published videos. Veoh's arguments fail because these facts are simply wrong.

-1-

Veoh officials have repeatedly stated in public forums that Veoh *does* review content before it publishes it. In fact, at the time plaintiff filed its complaint, Veoh provided detailed information on its website about how Veoh subjects each submitted video to a detailed review process. On its website Veoh specifically stated, "Before any video is made available for viewing, it will go through a number of quality steps. After completing the publishing process, the video will move to the Veoh review process. This process is managed by Veoh to ensure the video complies with the Terms of Use, as well as the accuracy and appropriateness of the descriptive information." Sperlein Declaration at ¶2 and Exhibit A attached thereto.

Subsequent to plaintiff's filing suit, Veoh removed the above quoted language from its website. *Id*. at ¶3 and Ex. B. The fact that Veoh had a stated policy of reviewing every video, but represented to the Court that it does not, puts Veoh's veracity and integrity at issue even at this very early stage in the litigation process.

By stating that Veoh does not advertise or otherwise charge for any services offered by and through veoh.com, Veoh would have the Court believe it operates as a patron of the video arts, offering free publication of content simply out of a commitment to philanthropy. Of course that is not the case. While Veoh does not currently advertise, company officials have made it clear that Veoh intends to introduce both advertising and pay-per-view services in the future.

On the current version of its frequently asked questions, Veoh writes,

> "**10. Can I charge for my video?** Not yet, in the near future Veoh will be allowing publishers to offer content on a pay-per-view, pay-to-own or subscription basis. If you are interested in offering content on a paid basis, please contact us." *Id*. at ¶4 and Ex.C.

Veoh CEO Dmetri Shapiro repeatedly states to the press the Veoh intends to introduce advertising to the website. Articles linked from the media coverage section of veoh.com include such statements. *Id*. at ¶5 and Ex D.

Moreover, even if plaintiff is currently not advertising on the website, draw to the website alone brings it into the same rubric as the other sites. That is to say, the draw Veoh enjoys from

the infringing works creates a direct financial benefit sufficient to exclude an internet service provider from the safe harbor provisions of the DMCA.  *See A&M Records v. Napster, Inc.*, 239 F.3d 1004, 1023 (9th Cir. 2001) (A draw created by increased quantity of content is sufficient for a finding of financial benefit.); *See also, Perfect 10 v. Google, Inc.*, 416 F. Supp. 2d 828, 857 (D. Cal. 2006).

In fact, Veoh could stand to gain huge profits without ever introducing advertising to the website as was recently proven by Google, Inc.'s purchased of a similar video sharing site, youtube.com.  Like veoh.com, youtube.com had not yet begun to advertise to the enormous number of viewers who were flocking to the site.  Nonetheless, the high volume of visitors was enough to fetch a $1.6 billion purchase price.

It its opposition papers, Veoh further argues that it is different from one of the other sites, pornotube.com, because pornotube does not allow users to comment on videos.  This is true, but insignificant compared to the number of features that all three video sharing sites have in common.

Veoh.com organizes videos in the same manner as the other defendant websites.  All three sites organize videos by channels (although pornotube.com refers to the groups as categories rather than channels).  Veoh.com, just like xtube.com and pornotube.com, organizes videos by those which their viewers rate as favorites.  All three sites also group videos by the most recently published videos, as well as the most viewed videos.  Each site also allows users to search for videos by keywords in the user inputted description fields.  *Id.* at ¶6.

The similarity of the three sites reaches beyond how the sites organize the videos.  Significantly, each of the defendant websites allows users to upload video content to eventually be reformatted and then broadcast from their site.  *Id.* at ¶7.  Each of the companies transform the files into Flash format.  *Id.* at ¶8.  Each displays at least a portion of the material from its web servers so that anyone with a computer and a high-speed Internet connection can view those portions of the videos.  *Id.* at ¶9.  Each company uses the content in order to attract users to the website for the purposes of profiting from that traffic, either currently or in the future.

At first glance, the sites may appear to be very different, because Veoh does not currently allow adult content, while the other two are comprised exclusively of adult content.  However, for

the most part the nature of the content is immaterial to the question of whether the operators are liable for the copyright infringement occurring on their sites.  At the time of the infringing activity, veoh.com did broadcast adult content, including material belonging to Plaintiff.  It only later changed its policy to exclude such material.  Granted there will be some factual questions before the court which are different for the various defendants, but these facts will be minimal.

What will be on trial here is a new business model based on emerging technology; a business model each of these defendants share, regardless of variations in the content on which they focus.  The fundamental question before the court will be, does this business model create liability on the part of the websites.  The answer to the question will not be found in the minor fact variances, but in understanding the technology and the business model employing that technology.

Similar to recent high-profile cases concerning Internet-based copyright infringement like *Napster* and *Grokster*, the Courts' rulings in these matters will have a far reaching effect.  Also similar to those cases, the most challenging part of the litigation is going to be explaining the technology through testimony and expert witnesses.  It may serve the principle of judicial economy to relate these matters and thereby address these complex technological questions in one court, one time, rather than in front of two or three different courts.

Significantly the two other defendants have not objected to relating these matters.

Dated:  *October 20, 2006*                                  Respectfully submitted,

/s/ Gill Sperlein

GILL SPERLEIN,
Attorney for Plaintiff

# CERTIFICATE OF SERVICE

I am over 18 years of age, am employed in the county of San Francisco, at 69 Converse Street, San Francisco, California, 94103. I am readily familiar with the practice of this office for collection and processing of correspondence for mailing with United Parcel Service and correspondence is deposited with United Parcel Service that same day in the ordinary course of business.

Today I served the attached:

- **PLAINTIFF IO GROUP, INC.'S REPLY TO VEOH NETWORK INC.'S OPPOSITION TO PLAINTIFF'S ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED**
- **DECLARATION OF GILL SPERLEIN IN SUPPORT OF PLAINTIFF IO GROUP, INC.'S REPLY TO VEOH NETWORK INC.'S OPPOSITION TO PLAINTIFF'S ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED**

by causing a true and correct copy of the above to be placed with United Parcel Service at San Francisco, California in sealed envelopes with postage prepaid, addressed as follows:

Richard F. Cauley
Wang, Hartman & Gibbs, P.C.
1301 Dove Street, Suite 1050
Newport Beach, CA 92660

And via e-mail to rcauley@jcpw.com

Lance Blundell, General Counsel
Data Conversion, Inc. D/B/A AEBN
5300 Old Pineville Road, Suite 152
Charlotte, NC 28217

And via e-mail to Lance.Blundell@aebn.net

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on *October 20, 2006*.

/s/*Eric Burford*
Eric Burford

-1-

-2-

    I hereby attest that this is the declaration of Eric Burford and the original with Eric Burford's holographic signature is on file for production for the Court if so ordered, or for inspection upon request by any party.  Pursuant to the laws of the United States, I declare under penalty of perjury the foregoing is true and correct.

Dated: *October 20, 2006*   /s/ Gill Sperlein_____
GILL SPERLEIN,
Counsel for Plaintiff Io Group, Inc.