1    GILL SPERLEIN (172887)
2    THE LAW OFFICE OF GILL SPERLEIN
      584 Castro Street, Suite 849
3    San Francisco, California 94114
      Telephone: (415) 378-2625
4    legal@titanmedia.com

5    Attorney for Plaintiff
6    IO GROUP, INC.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| IO GROUP, INC., a California corporation, | ) CASE NO.: **C-06-03926 (HRL)** |
| Plaintiff, | ) **PLAINTIFF IO GROUP, INC.'S REPLY TO DEFENDANT VEOH NETWORK'S OPPOSITION TO MOTION TO COMPEL PRODUCTION OF DOCUMENTS REQUESTS NUMBERED 2, 4, 5, 7, 8, 9, 10, 11, 12, 14, 16, 21, 22, 23 and 24.** |
| vs. | ) DATE: April 10, 2007 |
| VEOH NETWORKS, Inc., a California Corporation, | ) TIME: 10:00 a.m. |
| Defendant. | ) COURTROOM: 2 |
| | ) Discovery Cut Off: April 30, 2007 |
| | ) Pre-Trial Conference Date: October 18, 2007 |
| | ) Trial Date: October 24, 2007 |

-i-

PLAINTIFF'S REPLY, MOTION TO COMPEL
C-06-03926 (HRL)

Dockets.Justia.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 1

I.  INTRODUCTION ............................................................................................................. 1

II.  STATEMENT OF FACTS ............................................................................................... 2

A.  Background Issues ............................................................................................................ 2

III.  ARGUMENT .................................................................................................................. 5

A.  Boilerplate Objections ...................................................................................................... 3

B.  Specific Requests

Request Number 2. ................................................................................................................ 4

Request Number 4. ................................................................................................................ 5

Request Number 5. ................................................................................................................ 6

Request Number 7. ................................................................................................................ 6

Request Number 8. ................................................................................................................ 6

Request Number 9, 10, 11, and 12. ....................................................................................... 7

Request Number 14. .............................................................................................................. 9

Request Number 16. .............................................................................................................. 9

Request Number 21. ............................................................................................................ 10

Request Number 22. ............................................................................................................ 11

Request Number 23. ............................................................................................................ 12

Request Number 24. ............................................................................................................ 12

CONCLUSION .................................................................................................................... 13

# TABLE OF AUTHORITIES

## CASES

*A & M Records, Inc. v. Napster, Inc.*, 114 F. Supp. 2d 896 (D. Cal. 2000) .................................... 9

*A&M Records v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001) ........................................... 2, 7, 10

*Ellison v. Robertson*, 357 F.3d 1072 ...................................................................................... 10

*Fonovisa Inc. v. Cherry Auction, Inc.*, 76 F.3d 259 ..................................................................... 7

*MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (U.S. 2005) ...................................................... 2

*Perfect 10 v. CCBill, LLC,* 71 U.S.P.Q.2d 1568 (C.D.Cal.2004) ................................................ 10

*Perfect 10 v. Google, Inc.*, 416 F. Supp. 2d 828, 857 (D. Cal. 2006) ........................................... 11

*Scharmer v. Agnew Associates, Inc.* 167 U.S.P.Q. 77 (E.D.N.Y. 1970) ....................................... 10

## STATUTES

17 U.S.C. § 512 ....................................................................................................................... 2, 12

**POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

Defendant argues that "Veoh has diligently responded to Plaintiff's discovery requests in this case, and has already produced documents responsive to many of Plaintiff's requests." However, as of the filing of this Reply, forty-two (42) days have passed since Defendant's Responses to Plaintiff's First Set of Requests for Production were due and in spite of repeated requests by Plaintiff's counsel, Veoh has failed to produce a single document in response to those requests – not a single document!  Sperlein Declaration at ¶4.

The *only* documents Defendant has produced are those it produced with its initial disclosures.  *Id*. at ¶3.  By definition Defendant has hand selected those documents for possible use to support its claims or defenses.   It is unlikely that Veoh would produce culpatory documents as part of its initial disclosures.   Even with regard to those documents, Defendant asked for a last minute extension and produced them nearly a month later than originally scheduled by the Court.  *Id*. at ¶2.

Defendant has continually disrupted Plaintiff's ability to properly investigate and prepare its case for trial.  In addition to stalling on document production, Defendant canceled a scheduled deposition less than twenty-four hours in advance.  Defense counsel called the day before the deposition of Mr. Joseph Papa to inform Plaintiff that Mr. Papa could not attend due to a sinus infection.  Plaintiff does not question Defense Counsel's veracity on this issue, but the net result is the same – Plaintiff's ability to prepare for trial is being hampered by Defendant.  *Id*. at ¶¶5 and 6.

This motion will be heard on April 10, 2007.  Discovery is currently scheduled to close on April 30, 2007. Even if the Court orders immediate production, Plaintiff will not have sufficient time to review and analyze the documents and perform follow up discovery as

-1-

necessary. In Plaintiff's very first meet and confer letter, it stressed the short time schedule and warned Defendant that it would have to immediately seek a production order if the issues were not resolved quickly. *Id*. at ¶7. Yet defense counsel continued to delay.

Indeed, in light of Defendant's failure to produce a single document in response to Plaintiff's discovery requests, Plaintiff anticipates seeking an extension of the fact discovery cut off date.

## II.    FURTHER STATEMENT OF FACTS

Defendant dismisses Plaintiff's references to *Napster* and *Grokster*, stating that this case is different because Plaintiff did not notify Veoh of the alleged infringements prior to filing suit. However, in both *Napster* and *Grokster*, plaintiffs' primary argument was that in certain situations, the operator of a computer website or the creator of peer-to-peer software has a responsibility to prevent copyright infringement from occurring by and through their systems without prior notice from the copyright holder of specific infringing acts. *A&M Records v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001) and *MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 921 (2005).

The provisions of the Digital Millennium Copyright Act (DMCA) can immunize Internet service providers (ISPs) from liability for copyright infringement occurring on their system, provided the ISP follows certain prerequisites. 17 U.S.C. §512. One of the features of the DMCA is to provide immunity to an ISP when it removes infringing material upon formal notice from the copyright holder. However, that is only one of the provisions and in fact, an ISP will lose its eligibility for safe harbor if it is aware of facts from which infringing activity is apparent and does not expeditiously remove the material – without notice from the copyright holder. 17 U.S.C. §512(c)(1)(A). Similarly, an ISP will not be eligible for the safe harbor provisions if it receives a

direct financial benefit from the infringing activity and has the right and ability to control the infringing activity. This is true regardless of whether or not the ISP had knowledge of the infringing activity through a formal notice or by any other means. 17 U.S.C. §512(c)(1)(B). Therefore, Plaintiff's document requests exploring Veoh's ability to control the infringing environment and abililty to reap a financial benefit from the infringing activity are all directly on point and relevant.

Like the plaintiffs in *Napster* and *Grokster*, Plaintiff Io Group correctly argues that Veoh is not eligible for the safe harbor provisions of the DMCA and must either take measures to prevent the Veoh System from being used for copyright infringement or be prepared to accept responsibility for infringement when it occurs.

**ARGUMENT**

**A. Boilerplate Objections**

In its opposition papers, Defendant provided authority supporting the use of general objections. However, Plaintiff did not protest the use of general objections; it protested the use of *boilerplate* objections whether set forth as general or request-specific objections. There should be no confusion as to which boilerplate objections Plaintiff complains, since Plaintiff created bold headings for each type of boilerplate objection: overbroad, burdensome and oppressive; vague, ambiguous and unintelligible; privileged; private and confidential; and non-relevant.

Rather than cutting and pasting from a list of objections without further comment, Defendant should have explained the specific basis for its objections, so that if possible deficiencies could have been cured. For example, Defendant objected that fourteen of Plaintiff's requests were vague, ambiguous or unintelligible, but took no effort to explain why it found the request difficult to understand. Clearly this type of objection could have been cured through the

meet and confer process had the Defendant been sufficiently motivated. It's clear that Defendant's goal is not to understand or focus Plaintiff's requests, but simply to delay production as long as possible.

Defendant is dismissive of Plaintiff's statement that "in many instances plaintiff cannot determine where Defendant has actually withheld responsive documents." Plaintiff's point is simple: where Defendant has not agreed to produce any documents, it is difficult to determine if Defendant is refusing to produce responsive documents based on its objections or if Defendant cannot determine whether or not there are any responsive documents at all. When Defendant simply regurgitates from a list of boilerplate objections without further explanation it will always be difficult to find resolution.

**B. Specific Requests**

**Request No. 2:**

All DOCUMENTS which constitute, describe, refer to or relate to reports identifying the amount of daily traffic, hits, and/or visits to veoh.com since VEOH NETWORKS began operating veoh.com.

**Io Group's Reply:**

Io Group has clearly explained the relevance of this request - obvious changes in traffic may correlate to whether or not content added to or removed from the Veoh System served to draw users to the site. For example, the traffic reports will show that when Veoh removed adult content from its system (including Plaintiff's infringed works) it suffered a profound drop in traffic.

Moreover, Plaintiff is entitled to explore why Defendant distributed adult video files and infringing content through the Veoh System in spite of the associated legal risks. The answer is of course that there was a potential for great financial reward. The reward is inextricably linked to the amount of traffic the website gained from allowing this material. Documents reflecting

changes to traffic which may correspond to changes in available content are relevant and discoverable.

Moreover, as discovery progresses Plaintiff will learn more about how the Veoh System operated and what changes were made to the system overtime.  One way of analyzing why changes were made (including changes to Veoh's copyright infringement or content review policies) and what effect those changes had on the operation of the site, is to look at how the traffic patterns changed over the same time frame.

Io Group has also addressed the proportionality requirement by agreeing narrow the request to daily traffic reports.  There is no need to limit the time frame because Veoh's has been in existence for less than two years.

Notably Defendant does not dispute that daily traffic information is routinely maintained and easily retrievable.

**Request No. 4:**

All DOCUMENTS which constitute, describe, refer to or relate to DEFENDANT's procedures for verifying the accuracy and/or appropriateness of the categorization or indexing of content submitted to veoh.com for publication by and through veoh.com, including all original, draft, subsequent, or revised versions of such DOCUMENTS.

**Io Group's Reply:**

There is nothing vague about this request. When Users submit video files to the Veoh System the User also supplies a title, enters a description of the video file and places the video in a category.  Veoh compiles all this information in a central data base and indexes it so that other Users can locate the file by using Veoh's search function.  Veoh has publicly stated that it reviews each submission to make sure Users supply accurate information and place video files in appropriate categories.  Plaintiff seeks to obtain any documents verifying or relating to this policy. These documents might be the actual written procedures, or they may be a memo or e-mail by a Veoh employee stating that such procedures should or should not be implemented.  To the extent Veoh currently states that no such documents exist the issue is resolved.  However, that was not the Veoh's position prior to the filing of its Opposition.  Moreover, if Plaintiff's further

-5-

PLAINTIFF'S REPLY, MOTION TO COMPEL
C-06-03926 (HRL)

explanation here changes Veoh's understanding such that there are responsive documents, Veoh should be ordered to produce those documents immediately.

**Request No. 5:**

All DOCUMENTS which constitute, describe, refer to or relate to DEFENDANT's procedures for processing and handling content once submitted to veoh.com for publication by and through veoh.com.

**Io Group's Reply:**

There is no doubt that this request would likely encompass a large number of documents. However, the fact that a large number of documents are responsive to a request does not render the request patently overboard. As described by Defendant, "Veoh's core function of allowing users to share content through Veoh" is precisely what is at issue in this case. Veoh provided a means for wholesale copyright infringement, did nothing to prevent the infringement in spite of its right and ability to do so, and gained a direct financial benefit from the infringing activity. In order to argue as to why Veoh had the right to control the infringing activity and how it may have prevented the infringing activity, it is imperative that Plaintiff be given an opportunity to examine what Veoh did with the video files its Users submitted and licensed to Veoh.

**Request No. 7:**

All DOCUMENTS which constitute, describe, refer to or relate to material used by VEOH NETWORKS to market veoh.com or to attempt to obtain capital financing for VEOH NETWORKS, INC.

**Io Group's Reply:**

At the time Plaintiff filed its motion to compel Defendant had not agreed to Plaintiff's proposed limiting language. Defendant has now agreed to produce documents responsive to the narrowed request. However, agreeing to produce and actually producing are two different things. Defendant still has not produced any responsive documents.

**Request No. 8:**

All DOCUMENTS which constitute, describe, refer to or relate to DEFENDANT's policy or policies regarding the display by and through veoh.com of explicit material (whether such

-6-

material is described as "explicit," "adult," "pornographic," "nude," "sexual" or any other similar word), including all original, draft, subsequent, or revised versions of such DOCUMENTS.

**Io Group's Reply:**

Defense counsel skillfully attempts to misconstrue plaintiff's argument and the application of the law. In order to answer the question of whether or not Veoh had the right and ability to control the infringing activity, one must first ask the broader question of whether or not Veoh has the right and ability to control which video files are can be broadcast through the Veoh system and which files cannot. "The ability to block infringers' access to a particular environment for any reason whatsoever is evidence of the right and ability to supervise." *A&M Records v. Napster, Inc.*, 239 F.3d 1004, 1023 (9th Cir. 2001)(*citing Fonovisa Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 262).

Io Group will prove that Veoh exercised enormous control over what video files resided on and were broadcast through the Veoh System. One way to show this is to demonstrate how effectively Veoh was able to regulate the broadcast of video files that contained adult material.

At the time Plaintiff filed its motion to compel defendant had not agreed to produce documents responsive to this request. It is unclear from defendant's discussion in its opposition as to whether or not it now agrees to produce responsive documents. In any event Defendant should be order to immediately produce all responsive documents.

**PRODUCTION REQUESTS 9, 10, 11 and 12**

**Request No. 9:**

All DOCUMENTS which discuss if or how 18 U.S.C. § 2257 and implementing regulations at 28 C.F.R. 75.1 et seq. relate to VEOH NETWORK'S operations.

**Request No. 10:**

All DOCUMENTS which constitute, refer to or relate to VEOH NETWORK, INC.'S policies for preventing child pornography from being published by and through veoh.com.

**Request No. 11:**

All DOCUMENTS which constitute, refer to or relate to VEOH NETWORK, INC.'S policies for obtaining proof that individuals appearing in explicit material submitted to VEOH

NETWORK, INC. for publication by and through veoh.com were over eighteen years of age at the time the material was produced.

**Request No. 12:**

All DOCUMENTS which constitute, refer to or relate to VEOH NETWORK, INC.'S policies for ensuring that any sexually explicit material VEOH NETWORKS transmitted by and through veoh.com was properly labeled with information as to where the producer of such content maintained records proving the individuals appearing in the material were over eighteen years of age at the time the material was produced.

**Io Group's Reply:**

Again Veoh attempts to argue that its right and ability to control content on the Veoh site is not relevant, when in fact it is extremely relevant. Io Group, Inc. is entitled to any documents which show that Veoh was able to control what video files appeared on its system, including video files containing sexually explicit material and also including video files containing illegal child pornography.

Federal laws require that any video containing sexually explicit material be labeled with the actual name and business address of the producer of the material. Had Veoh followed the law, the infringing activity would have been all the more apparent. Specifically, Plaintiff seeks to explore whether Veoh ignored the law in order to willfully blind itself to the true ownership of sexually explicit video files. Veoh's reasons for not following federal labeling laws therefore become relevant. Perhaps Veoh simply was not aware of the law or believed it did not apply. Whatever the reason, Plaintiff is entitled to know. If Veoh was unaware of the law, than no documents are likely to be responsive and Veoh is simply choosing to use this opportunity to argue its case and expend resources rather than to relieve Veoh of any burden to produce.

While Plaintiff offered to combine the language of requests Nos. 9 and 12, Defendant has not agreed to produce documents responsive to the proposed new language. When and until Veoh agrees to the produce documents responsive to the proposed language, the existing requests stand.

-8-

PLAINTIFF'S REPLY, MOTION TO COMPEL
C-06-03926 (HRL)

**Request No. 14:**

All DOCUMENTS which discuss, refer to or relate to VEOH NETWORK, INC.'S ability to discover the true identity of individuals who submit content for publication by and through veoh.com.

**Io Group's Reply:**

As Judge Patel noted in *Napster*, efforts to remain ignorant of user's names can be indicative of efforts to protect the use of a Service for the transfer of infringing files. *A & M Records, Inc. v. Napster, Inc.*, 114 F. Supp. 2d 896, 918 (D. Cal. 2000). Veoh purposefully created a system whereby users could anonymously submit material without fear of being identified, thereby permitting, if not inducing, its users to engage in copyright infringement. Had Veoh seriously wanted to reduce the amount of infringement occurring through the Veoh System, it would have taken measures to learn the identity of the individuals from whom it licensed content. Any documents speaking to whether or not Veoh's users could use the system while remaining anonymous are relevant, as are any documents relating to why Veoh allowed (or did not allow) its content contributors to remain anonymous.

**Request No. 16:**

Electronic copies, in a readily viewable format, of all files containing adult material (whether such material is described as "explicit," "adult," "pornographic," "nude," "sexual" or any other similar word) ever published by and through veoh.com.

**Io Group's Reply:**

Plaintiff has not complained about Veoh's decision to remove sexually explicit material from the Veoh System. Plaintiff merely points out that it is impossible for it to determine the extent of additional infringement of its works without having the opportunity to review video files no longer available by and through the Veoh System. Plaintiff has limited its request to sexually explicit video files, because Plaintiff does not produce any non-sexually explicit material.

Defendant has a high level of expertise with regard to transferring video files. In fact, prior to removing all sexually explicit material from the Veoh System, Defendant was able to deliver multiple copies of the material to hundreds of thousands of world wide Users apparently with no

-9-

1 difficulty and according to Defendant's arguments it did so for free. Now Defendant complains
2 that it cannot produce that same content to Plaintiff for review.   Defendant has not provided a
3 declaration from any Veoh employee, estimating the amount of material, the technological
4 difficulties or any other reason why the material would be difficult to produce. Defendant simply
5 refers to the production as an enormous burden. With regard to cost shifting, Plaintiff has
6 repeatedly offered to provide high capacity storage devices.

7     Defendant relies on a citation from the *Perfect 10* case which refers to whether or not
8 evidence of *third-party* copyrights are relevant to a claim of copyright infringement. *Perfect 10 v.*
9 *CCBill, LLC,* 71 U.S.P.Q.2d 1568 (C.D.Cal.2004). This is completely beside the point. Plaintiff
10 seeks to determine how many additional *Plaintiff*-owned works Veoh infringed by copying and
11 broadcasting them through the Veoh System.

12 **Request No. 21:**

13     All DOCUMENTS which constitute, refer to or relate to DEFENDANT's ability to
14 monetize veoh.com including, without limitation, through advertising revenue, video on demand
15 fee sharing or any other means.

16 **Io Group's Reply:**

17     Defense counsel misrepresents the state of the law. In fact, she relies on a thirty-seven-
18 year-old case from the Eastern District of New York involving non-Internet based patent
19 infringement. *Scharmer v. Agnew Associates, Inc*. 167 U.S.P.Q. 77 (E.D.N.Y. 1970). Instead of
20 relying on irrelevant case law, counsel should look to the current authoritative cases of this
21 Circuit. In *Napster II* the Ninth Circuit ruled that a showing that infringing activity served to draw
22 more users to a site is sufficient to establish a direct financial benefit. *A & M Records v. Napster,*
23 239 F3d 1004 (9th Cir. 2001). In fact, *Elision*, the case upon which Veoh relies, not only affirms
24 that holding from *Napster II,* but goes even further to hold that there is no requirement that the
25 draw be "substantial." *Ellison v. Robertson*, 357 F.3d 1072, 1078 (9th Cir. 2004).

26     Finally, in *Google v. Perfect 10* (a case which should be familiar to defense counsel as she
27 served as lead counsel for Google), the District Court acknowledged the Ninth Circuit's "draw
28 equals direct financial benefit" position as reflected in *Napster II* and *Ellison* and went on to note

-10-

PLAINTIFF'S REPLY, MOTION TO COMPEL
C-06-03926 (HRL)

that "[t]his broad definition of 'direct financial benefit' would encompass even a 'future hope to 'monetize.'" Nimmer § 12.04[A][1] (commenting on *Napster II*)." *Perfect 10 v. Google, Inc.*, 416 F. Supp. 2d 828, 857 (D. Cal. 2006).

Thus, Veoh's "ability to monetize veoh.com" is directly relevant to claims and defenses and the Court should order Veoh to produce all responsive documents immediately.

**Request No. 22:**

All DOCUMENTS explaining how veoh.com and each of its features operates or was intended to operate, including without limitation, such DOCUMENTS given to employees or contractors tasked with designing, programming or constructing veoh.com.

**Io Group's Reply:**

For all the reasons stated in Plaintiff's Motion to Compel, Plaintiff is entitled to know and understand the operations of veoh.com, the website by and through which Plaintiff's works were infringed. Virtually every aspect of the website is relevant as to whether Veoh directly infringed Plaintiff's works, if Veoh knew of the infringing activity, how much control Veoh had over the infringing activity and whether or not the infringing activity served as a draw, thereby providing a direct financial benefit. There is no doubt that the veoh.com website is complex, but that only creates a further need for the production of documents, so that Plaintiff can determine how each feature of the website adds to Veoh's right and ability to control the infringing activity at issue.

The document request is narrowly drawn in that it does not seek documents *relating* to or *referring* to how the website operates, but only documents which actually explain how the website features operate.

During meet and confer efforts defense counsel suggested that Plaintiff should wait to make this request until after it takes depositions because it would then be able to more narrowly tailor the request. While this may be true, it puts Plaintiff in an unacceptable catch-22 situation. Should Plaintiff postpone requesting these relevant documents until after depositions, Plaintiff will not have the opportunity to ask clarifying questions in a deposition environment. Moreover, under the current discovery and deposition schedule, Plaintiff would not even have sufficient time to request additional production after depositions, much less have an opportunity to schedule follow

-11-

PLAINTIFF'S REPLY, MOTION TO COMPEL
C-06-03926 (HRL)

up depositions to inquire about any documents produced.   Plaintiff is entitled to receive these documents (the request for which will have been pending ninety (90) days by the time this motion is heard) prior to taking depositions and with sufficient time to engage in follow up discovery.

**Request No. 23:**

All DOCUMENTS with reference to or written policies, procedures and guidelines related to DEFENDANT'S computers or computer systems including, without limitation, back up schedules and procedures, electronic retention and preservation schedules, and file naming conventions.

**Io Group's Rely:**

Defendant's computer systems provided the means by which Veoh infringed Plaintiff's works.  These computer systems were the location of the unauthorized copying, distribution and public display of Plaintiff's works.  The written policies, procedures and guidelines for these systems are directly relevant and are essential to determining, how the infringing activity occurred and the degree to which Veoh is culpable for the infringing activity.  For example, Defendant claims that it is a service provider under 17 U.S.C.§512(a) which requires that copies of material be maintained on its computer system no longer than is reasonably necessary for the transmission, routing, or provision of connections.  17 U.S.C. §512(a)(4).  In order to evaluate the application of this provision it is essential to review Veoh's written procedures for retaining material on its computer systems.  Defendant's computer procedures may also have resulted in making multiple copies of Plaintiff's works, possibly creating new acts of direct infringement with each copy.

These documents are relevant.  Defendant has provided no explanation whatsoever as to why it would be burdensome to produce responsive documents.

**Request No. 24:**

All DOCUMENTS identifying computers, equipment and software used in conjunction with the operation of veoh.com.

**Io Group's Reply:**

Like Request No. 23, this request asks for basic documents describing Veoh's computer systems – the systems that were used to infringe Plaintiff's works.  In its deposition of Dr. Ted

-12-

Dunning, Plaintiff was able to learn the location and purpose of several different groups of computers involved in the infringement. However, Plaintiff's attempts to question Dr. Dunning about these systems and how they operate were hampered because Defendant failed to produce these documents on schedule and therefore Plaintiff did not have a basic understanding of the system in advance of the deposition. Sperlein Declaration at ¶8. Moreover, at deposition, the deposing party's search for the truth is subject to the memory, veracity and recollection ability of the deponent. By requesting the production of documents, Plaintiff is more likely to get an accurate understanding of where Defendant's servers are located and how the system operates.

It's worth noting that had Defendant properly produced these documents on schedule, the deposition of Dr. Dunning could have been more efficient thereby saving the time and expense of both parties.

## IV. CONCLUSION

For all of the reasons stated above and in Plaintiff's original Motion to Compel, the Court should order Defendant Veoh Networks to produce within seven (7) days all documents responsive to Plaintiff's Requests for Production Numbered 2, 4, 5, 7, 8, 9, 10, 11, 12, 14, 16, 21, 22, 23 and 24, as well as, all documents Defendant previously agreed to produce.

Dated: March 26, 2007                    */s/ Gill Sperlein*

                                         _____
                                         GILL SPERLEIN
                                         THE LAW OFFICE OF GILL SPERLEIN
                                         Attorney for Plaintiff Io Group, Inc.