1   GILL SPERLEIN (172887)
2   THE LAW OFFICE OF GILL SPERLEIN
    584 Castro Street, Suite 849
3   San Francisco, California 94114
    Telephone: (415) 378-2625
4   legal@titanmedia.com

5
    Attorney for Plaintiff
6   IO GROUP, INC.

7
                    UNITED STATES DISTRICT COURT
8                  NORTHERN DISTRICT OF CALIFORNIA
                         SAN JOSE DIVISION
9

10                                      )  CASE NO.: C-06-03926 (HRL)
                                        )
11  IO GROUP, INC., a California corporation,  )
                                        )  PLAINTIFF'S NOTICE OF MOTION AND
12                                      )  MOTION FOR SUMMARY JUDGMENT ON
        Plaintiff,                      )  LIABILITY; MEMORANDUM OF POINTS
13                                      )  AND AUTHORITIES IN SUPPORT
              vs.                       )  THEREOF
14                                      )
                                        )
15  VEOH NETWORKS, Inc., a California    )
    Corporation,                        )
16                                      )  DATE:  September 4, 2007
                                        )  TIME:   10:00 a.m.
17      Defendant.                      )  COURTROOM:  2
    _____    )

18          TO: DEFENDANT VEOH NETWORKS, INC. AND ITS ATTORNEYS OF RECORD:

19          PLEASE TAKE NOTICE THAT ON September 4, 2007 at 10 a.m., or as soon thereafter

20  as the matter maybe heard in the above-entitled Court located at 280 South First Street, San Jose,

21  California, Courtroom 2, Plaintiff Io Group, Inc. will and hereby does move this Court pursuant to

22  Federal Rule of Civil Procedure 56 for summary judgment against Defendant Veoh Networks, Inc.

23
    on the issue of defendant's liability to Plaintiff for direct copyright infringement, vicarious
24
    copyright infringement, and/or contributory copyright infringement.
25
            This motion is brought on the grounds that, as to the forgoing, there are no genuine issues
26
27  of material fact and that Plaintiff is entitled to judgment on those issues as a matter of law.

28

                                        -i-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

     This motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declarations of Gill Sperlein and Keith Ruoff, the Depositions of Joseph Papa ("Papa Depo."), Dr. Ted Dunning ("Dunning Depo."), Dmitry Shapiro ("Shapiro Depo."), Arthur Bilger ("Bilger Depo.") and John Styn ("Styn Depo."), Defendant's Answer in this Action, Defendant's interrogatory and other discovery responses, all matters of which this Court may take judicial notice, all pleadings and papers on file in this action, and upon such other evidence and argument as may be presented to the Court at the time of the hearing.

     This Motion is filed pursuant to this Court's July 30, 2007 order allowing parties to exceed otherwise applicable page limitations.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
C-06-03926 (HRL)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................... v

I.     INTRODUCTION AND SUMMARY OF ARGUMENT.................................. 1

II.    STATEMENT OF FACTS ............................................................................... 2

       A.  User Registration............................................................................... 3

       B.  Defendant's Video Acquisition Process ............................................ 3

       C.  Defendant's Index Database .............................................................. 4

       D.  Defendant's Manipulation of Video Files It Acquired..................... 4

       E.  Sexually Explicit Content on www.veoh.com ................................. 6

       F.  Plaintiff's Works on www.veoh.com ................................................ 7

       G.  Defendant's Control of Content on Its Internet Television Network .................. 7.

III.   PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ........................ 9

IV.    PLAINTIFF OWNS AND HAS REGISTERED THE COPYRIGHTS TO THE
       INFRINGED WORKS.................................................................................. 10

V.     DEFENDANT IS LIABLE FOR DIRECT COPYRIGHT INFRINGEMENT OF
       PLAINTIFF'S WORKS ............................................................................... 10

       A.  Defendant Has Infringed on Plaintiff's Exclusive Right to Reproduce the Works
           in Copies. (17 U.S.C. §106(1)) ...................................................... 15

       B.  Defendant Has Infringed on Plaintiff's Exclusive Right to Prepare Derivative
           Works Based Upon the Works. (17 U.S.C. §106(2)) ...................... 16

       C.  Defendant Has Infringed on Plaintiff's Exclusive Right to Distribute Copies of the
           Work to the Public. (17 U.S.C. §106(3))........................................ 17

       D.  Defendant Has Infringed on Plaintiff's Exclusive Right to Perform and Display
           the Works Publicly. (17 U.S.C. §106(4) and (5)) .......................... 18

VI.    DEFENDANT IS VICARIOUSLY LIABLE FOR INFRINGEMENT OF
       PLAINTIFF'S WORKS ...........................................................................
       19

A. Defendant Received a Direct Financial Benefit from the Infringing Acts of Its Users ........................................................................................... 20

B. Defendant Had the Right and Ability to Control the Infringing Activity of Its Users ........................................................................................... 21

    i. The Infringing Activity Occurred on Defendant's Servers and within Premises Controlled by Defendant ...................................................... 22

    ii. Defendant Purported to License All Works Appearing on Its System, Including Plaintiff's Works.................................................................. 23

    iii. Defendant Reserves and Exercises Absolute Editorial Control over the Video Content Appearing on Its System............................................... 24

    iv. Defendant Reviews Files on Its System for Terms of Use Violations Including Copyright Violations ........................................................... 25

    v. Defendant Created and Maintained the Index Database Used to Organize and Locate Video Files on Its System Including the Infringing Copies of Plaintiff's Works ............................................................. 26

VII. DEFENDANT IS CONTRIBUTORILY LIABLE FOR INFRINGEMENT OF PLAINTIFF'S WORKS .......................................................................... 26

A. Defendant Induced, Caused, and Materially Contributed to Direct Infringement ....................................................................................... 27

B. Defendant Had Direct or Constructive Knowledge of the Infringement of Plaintiff's Works .................................................................................... 27

VIII. DEFENDANT HAS NOT PRODUCED EVIDENCE TO SUPPORT ANY OF ITS AFFIRMATIVE DEFENSES.......................................................................... 30

IX. CONCLUSION.......................................................................................... 30

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
C-06-03926 (HRL)

# TABLE OF AUTHORITIES

## CASES

*A&M Records, Inc. v. Napster, Inc.*, 114 F. Supp. 2d 896, 907 (N.D.Cal 2000) ........................... 2

*A&M Records v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001)("*Napster I*") ..................... 2, 20-27

*In Re: Aimster Copyright Litigation*, 252 F. Supp. 2d 634 (N.D.Ill. 2002) ........................... 20, 21

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) .......... 9

*Cable/Home Communication Corp. v. Network Prod., Inc.*, 902 F.2d 829 (11th Cir. 1990) ........ 26

*Cal. Arch. Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466 (9th Cir. 1987).......... 9

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)....................... 9

*CoStar Group, Inc. v. LoopNet, Inc.*, 373 F.3d 544 (4th Cir. 2004) ................................ 12, 14, 17

*Demetriades v. Kaufman*, 690 F. Supp. 289 (S.D.N.Y. 1988) ............................................... 19

*Ellison v. Robertson*, 357 F.3d 1072 (9th Cir. 2004) ........................................................ 10, 20

*Feist Pub'lns, Inc. v Rural Tel. Serv. Co.,* 499 U.S. 340, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (U.S. 1991) ........................................................................................................... 10

*Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259 (9th Cir. 1996) ........................ 19, 20, 21, 26

*Fontenot v. Upjohn, Co.*, 780 F2d 1190 (5th Cir. 1986) ................................................... 30

*Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159 (2d Cir. 1971) ........................................................................................................... 21, 28

*Hotaling v. Church of Jesus Christ of Latter-Day Saints*, 118 F.3d 199, 203 (4th Cir. 1997) ..... 17

*Kelly v. Arriba Soft,* 336 F.3d 811 (9th Cir. 2003)........................................................... 13

*Los Angeles News Serv. v. Reuters TV Int'l*, 942 F. Supp. 1275 (C.D. Cal. 1996) ..................... 10

*Louis Vuitton S.A. v. Lee,* 875 F.2d 584 (7th Cir. 1989) ................................................. 29

*MAI Sys. Corp. v. Peak Computer*, 991 F.2d 511 (9th Cir. 1993) .................................. 11, 13, 15

*Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) ....................................................................................................... 9

*MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 125 S. Ct. 2764, 162 L. Ed.2d 781 (U.S. 2005) ........................................................................................................... 2, 19

*Perfect 10 v. Google, Inc.*, 416 F. Supp. 2d 828 (C. Cal. 2006) .................................. 17

*Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701 (9th Cir. 2007).......................... 17

*Perfect 10, Inc. v. Cybernet Ventures , Inc.*, 213 F. Supp. 2d 1146, (CD Cal. 2002) .................. 10

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
C-06-03926 (HRL)

*Perfect 10, Inc. v. Visa Int'l Service Asso., et al.*, No. 05-15170, 2007 U.S. App. LEXIS 15824 (9th Cir., July 3, 2007) ............................................................................................ 19

*Playboy Enters. v. Webbworld Inc.*, 991 F. Supp. 543 (N.D. Tex. 1997) ("*Webbworld*") ........... 12

*Playboy Enters v. Russ Hardenburgh, Inc.* 982 F. Supp. 503(E.D. OH 1997) ........... 13, 14, 18, 27

*PolyGram Int'l Publishing, Inc. v. Nevada/TIG, Inc.*, 855 F. Supp. 1314 (D. Mass. 1994) ......... 20

*Religious Tech. Ctr. v. Netcom On-Line Commun. Servs.*, 907 F. Supp. 1361 (N. Cal. 1995) .........
.................................................................................................................. 10, 11, 12, 13

*RSO Records, Inc. v. Peri*, 596 F.Supp.849 (S.D.N.Y. 1984) ............................................ 27

*Sega Enters., Ltd. v. MAPHIA*, 948 F. Supp.  923 (N.D. Cal. 1996) ............................................. 26

*S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081 (9th Cir. 1989) ........................................... 11

*Saenger Org., Inc. v. Nationwide Ins. Licensing Assocs., Inc.*, 119 F.3d 55 (1st Cir. 1997) ......... 29

*Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304 (2d Cir. 1963) ........................... 19, 21

*Transgo, Inc. v. Ajac Transmission Parts Corp.*, 786 F.2d 1001 (9th Cir. 1985) ........................ 10

*Universal City Studios, Inc. v. American Invsco Management, Inc.*, 217 U.S.P.Q. 1076 (N.D. Ill. 1981) ....................................................................................................... 28

*Walco Products, Inc. v. Kittay & Blitz, Inc.*, 354 F. Supp. 121 (D.N.Y. 1972)  ......................... 16

*Zands v. Nelson*, 797 F.Supp. 805 (SDCA  1992) ..................................................... 30

## STATUTES

17 U.S.C. § 101 ...................................................................................... 12, 15, 16

17 U.S.C. § 410(c) ............................................................................................ 10

17 U.S.C. § 501(a) ............................................................................................ 10

17 U.S.C. §106 .......................................................................................... 10-18, 23

17 U.S.C. §205(c) ............................................................................................ 29

18 U.S.C. §2257 (f)(4) ................................................................................. 6, 24, 29

F.R.C.P. 56 ........................................................................................................ 9

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
C-06-03926 (HRL)

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION AND SUMMARY OF ARGUMENT

This is an action to recover damages for Defendant's infringement of Plaintiff's audiovisual works which Defendant, without authorization, copied, made derivative works therefrom, distributed and publicly displayed and performed via an Internet Television Network which Defendant owns and operates at www.veoh.com.

Defendant is as an Internet Television Network, (Shapiro Depo. 53:24-54:1) which acquires audiovisual works from various sources, including anonymous individuals who submit and purport to license video files to Defendant through Defendant's website. Papa Depo. 33:25-34:25. After obtaining video files, Defendant creates a new version of each file in a different format known as Flash®. Papa Depo. 154:23-155:15. This "transcoding" into Flash® format makes it technologically feasible for Defendant to publicly perform and display the works through its website.

Defendant indexes user-entered information in a database which it controls and maintains on its servers. Dunning Depo. 22:18-21, 28:1-29:1. Users can perform searches of the database in order to locate video files they wish to view. *Id*. Defendant creates and retains on its servers a copy of each submitted video file in its original (non- Flash®) file format. Dunning Depo. 39:19-40:21. This makes it possible for Defendant's users to download and retain a copy of the video file in its original format. *Id*.

Earlier cases originating in this circuit resulted in liability on the part of defendants who developed software used by individuals to transfer pirated copies of music and videos from one user's computer to another's, even where the infringing files never appeared on the defendants' servers and the defendants never engaged in any acts of direct infringement.  *See A&M Records,*

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
C-06-03926 (HRL)

*Inc. v. Napster, Inc.*, 114 F. Supp. 2d 896, 907 (N.D.Cal 2000) *aff'd in part, rev'd in part, and remanded, A&M Records v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001)("*Napster I*"); *MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 125 S. Ct. 2764, 162 L. Ed.2d 781 (U.S. 2005)("*Grokster*"). In contrast to those cases, this matter involves direct copyright infringement. Defendant's creation of the Flash® version of the video files, the creation of the still frame images, the copying and storing of the original file format version, and the public performance and display of the Defendant-created Flash® version are all acts of *direct* infringement of Plaintiff's exclusive rights.

Moreover, all of the infringing acts subsequent to the initial submission of the works occur on servers and other computer equipment operated and controlled entirely by Defendant. Unlike *Napster I* and *Grokster* where the infringing files remained on the computers of individual users, here users provide the infringing copies to Defendant and Defendant makes additional infringing copies in a new file format and stores, distributes, and publicly displays the infringing copies, using its hardware and software. All of the infringing activity occurs in a closed environment over which Defendant holds complete and total dominion.

Additionally, Defendant is liable for the infringing activities of its users under the theories of vicarious and contributory liability.

## II. STATEMENT OF FACTS

As the accompanying depositions, declarations and exhibits demonstrate, Defendant directly, vicariously and contributorily infringed Plaintiff's exclusive rights in its copyrighted works. Defendant, which refers to itself as an Internet Television Network, owns and operates a website at www.veoh.com. Shapiro 53:24-54:1. Defendant encourages individuals to submit video files through an on-line interface. Styn Depo. 24:4-21, 27:14-18. Defendant copies and

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
C-06-03926 (HRL)

manipulates the video files and makes them available to the general public by and through Defendant's website as described below.

A.    **User Registration -** In order to submit and upload video files users must first register with Defendant through the use of an online form and agree to Defendant's Terms of Use and Acceptable Use Policies, including a provision, granting "nonexclusive, perpetual, royalty-free, irrevocable and transferable" permission to Defendant make the video "freely available" through the Veoh Service. Shapiro Depo. 23:6-14, 24:6-26:18, Ex 5); Papa Depo. 12:2-5, 31:14-19. Users are required to select a user name (Dunning Depo. 72:2-6) and may enter an e-mail address, which Defendant does not currently check for validity.  Dunning Depo. 72:17-21. Users wishing to view sexually explicit video files must state that they are over eighteen. Dunning Depo. 153:21-154:10. Users are not required to identify themselves or provide any other information. Dunning Depo. 72:2-13.

B.    **Defendant's Video Acquisition Process -** Defendant only processes video files with a compression format ("codec") that is compatible with Defendant's system. *Id*. 12:10-17:21. During the upload process, users are requested to provide a title and description for the video file. Dunning Depo. 131:22-132:6. Users are also requested to "select between one to four categories that best describe" the video file ( *Id*. 78:9-16; Ruoff Decl. ¶24, Ex G) and to enter key words or "tags" "to describe [the] video so they are easily searched and organized." Dunning Depo. 22:24-23:15. Users are required to select a content rating "in order to ensure that users see only the content they feel is appropriate". Ruoff Decl. ¶25, Ex G; Dunning 106:11-107:5. Defendant reserves "the right to remove any inappropriately identified videos or change its content filter." *Id*.

-3-

**C.    Defendant's Index Database -** All of the information entered by the user goes into a centralized database that Defendant maintains on it servers "to allow users to frame queries in terms of metadata and then find videos." Dunning Depo. 22:18-21. A user may search the index database from www.veoh.com in order to locate either specific video files the user wishes to view, or a type of video file the user wishes to view. *Id*. The database also automatically indexes video file entries into a series of lists. For example, when a user on www.veoh.com clicks the tab marked "Most Recent" the indexing server generates a listing of the video files most recently added to www.veoh.com. Papa Depo 39:10-40:9. Other lists of video files automatically generated by Defendant's index at the time of the infringement included, "Top Rated" (video files which had received the highest ratings from other Veoh users), "Most Popular" (video files most viewed by others), "Most Discussed" (video files that received the most comments from users"), and "Top Favorites" (video files the most users had marked as their favorite). Ruoff Depo. ¶26, Ex. H.

Defendant can change information in the description field and admits that on occasion it makes such changes. Papa Depo.110:10-111:16. At the time of the infringement, Defendant also reviewed video files to ensure that any file containing sexually explicit material was properly rated. *Id*. 203:4-15. Defendant admits it reviewed sexually explicit video files to determine if they should be tagged as "gay" or "straight" and added those tags where needed. *Id*. 240:6-245:17.

**D.    Defendant's Manipulation of Video Files It Acquires -** If an acquired file is a compatible video file, Defendant proceeds with processing. *Id*. 155:3-24. Defendant makes a copy of the file in its original file format and moves that copy to Defendant's video servers, where it resides indefinitely. Dunning Depo. 40:5-11. For example, if a user submitted a video file in Microsoft Windows Media format, Defendant makes an exact copy of the .wmv file and places it on Defendant's video servers. *Id*. 42:8-11. Before a user can download a copy of the video file in

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
C-06-03926 (HRL)

its original file format, the user simply has to first download Defendant's proprietary software known as the Veoh Client. *Id*. 40:1-4. Users can then retain a copy of the video file in its original file format on their home computer and play it whenever he or she desires. *Id*.

It is a challenge to persuade users to download and install any piece of software, such as the Veoh Client (Papa Depo. 130:25-131:2), and it is technologically impractical to display and perform video files in multiple formats through video streaming from www.veoh.com. Therefore, Defendant sends a copy of all files to its Flash® conversion servers in Los Angeles (Dunning Depo. 47:3-48:1.), transcodes the video file and creates a new Flash® version of the video file. Papa Depo. 155:5-15. Defendant-created Flash® files are generally smaller and better compressed than the original files and Flash® format is supported by most users' browsers. Dunning Depo. 61:10-13; Papa Depo. 125:7-12. By converting video files into Flash® video format, Defendant can make the video files easily available to users through video streaming embedded within the webpage of www.veoh.com.  Papa Depo. 125:7-12. Defendant sets the specifications for the creation of the new Flash® file, including the bit rate, frame size, frame rate, and the codec. Papa Depo.126:1-129:18. Users who provide video files to Defendant have no control over what encoding specifications Defendant applies when transcoding the files into Flash® format. Papa Depo. 128:16-22.

Prior to October 2006, Defendant would only convert an entire video file into Flash® format if the video file was shorter than ten minutes. Papa Depo.129:19-130:12.  If the video file was longer than ten minutes, Defendant created a three minute Flash® preview file. *Id*. If a user wanted to view the entire video file he or she would first have to download and install the Veoh Client and then download the entire video file in its original format. *Id*. 130:19-24. Defendant changed its strategy in October 2006, because it believed that by offering full-size video files in

Flash®, with no time limitations, Defendant could better compete with YouTube and other competitors who limited the length of video files. *Id.* 129:15-130:18.

        For every video file Defendant acquires from a user, Defendant also extracts a number of frames from the video file and creates new single frame, still image files in .jpg format. Papa Depo. 155:16-24. Defendant selects the most interesting screen extraction, makes a thumbnail of it and displays it with the name of the video file in search results. Dunning Depo. 133:4-14.

        **E.      Sexually Explicit Content on www.veoh.com** - At the beginning of its operations, Defendant acquired and processed video files containing sexually explicit content along with all other content (Dunning Depo. 104:22-105:4) and monitored to ensure users had set the correct content rating, (*i.e.* adult material was marked as adult).  Papa Depo. 203:4-15. Defendant admits that it was aware of federal labeling law 18 U.S.C. §2257. *Id.* 192:12-196:3; Styn Depo. 43:1-48:13; Shapiro Depo. 64:2-21; Dunning Depo. 154:24-156:13. Nonetheless, Defendant did not ensure or confirm that sexually explicit video files it acquired were labeled with the name and address of the producer and the location of records confirming the age of the persons appearing in the sexually explicit video files as required at 18 U.S.C. §2257(f). Papa Depo.197:19-23.

        In June of 2006, Defendant changed its policy so that sexually explicit video files would no longer be permitted and on June 23, 2006, blocked access to all sexually explicit video files appearing at www.veoh.com (Dunning Depo. 105:5-17) and deleted all such files from the home computers of users. *Id.*; Shapiro Depo. 70:25-73:3.

        Defendant's viewing audience was interested in viewing sexually explicit material on veoh.com. Shapiro Depo. 63:16-64:1. In fact the site became "overrun" with adult material. Shapiro 64:2-13. Traffic to www.veoh.com decreased when Defendant changed its adult content

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
C-06-03926 (HRL)

policy (Shapiro Depo. 71:5-8) which was instituted because Defendant feared the large amount of sexually explicit content would deter potential investors or advertisers and would make it difficult to form relationships with mainstream content producers. Bilger Depo.33:9-35:2. Shapiro Depo. 64:2-66:24.

      **F.    Plaintiff's Works on www.veoh.com -** In June of 2006, Plaintiff discovered that Defendant was displaying and distributing portions of seven (7) of its works by and through www.veoh.com. Ruoff Decl. ¶5, 13 and 14. Counters on the Defendant's website indicated that all of Plaintiff's works had been viewed numerous times and that one work had been viewed nearly 10,000 times. *Id*. at ¶17, Ex. D. Upon review of those video files produced by Defendant in discovery, Plaintiff catalogued three (3) additional Plaintiff owned works that had been improperly exploited by and through www.veoh.com. *Id*. at ¶15.

      **G.    Defendant's Control of Content on Its Internet Television Network -** Defendant operates as an Internet Television Network (Shapiro 53:24-54:1) and acquires content from a number of sources. For example, Defendant has offered through its Internet Television Network located at www.veoh.com content acquired from Turner Broadcasting, CBS, *Us Magazine*, *Road and Track Magazine*, *Car and Driver Magazine*, and United Talent Agency. *Id*. 34:25-35:20. Defendant obtains content from these providers because both the content and the association with well-branded companies draw users to the website increasing its value. *Id*. 43:12-24. In some cases, Veoh employees actually perform the task of uploading the video files and entering the titles, descriptions and tags. *Id*. 36:19-39:7. Papa Depo. 29:19-30:2. Defendant's marketing department produces videos promoting Veoh, which Defendant also uploads to the website. Papa Depo.28:12-29:1. As discussed *supra*. Defendant also acquires content from anonymous users who submit video files by through Defendant's website interface located at

-7-

www.veoh.com. Defendant's paid consultant encouraged people to upload video files to

www.veoh.com in this manner and suggested programs that would-be-producers might create.

Styn Depo. 31:16-33:24.

Defendant has complete control and discretion to refuse or remove submitted video files

for any reason. Shapiro Depo. 27:16-28:13 and Ex 5. Defendant's Acceptable Use Policy in effect

at the time of the alleged infringement prohibited files containing defamatory material, unsolicited

advertising, charity requests, vulgar, hateful, racially or ethnically offensive material or material

"otherwise inappropriate, regardless of whether [the] material or its dissemination is unlawful".

Ruoff Depo. ¶9, Ex. C. Defendant reserved the right to reject or remove such material and actively

exercised that right. Shapiro Depo. 58:24-59:11; Papa Depo. 94:21-95:9.

Defendant reviews its system to determine if video files fall within Defendant's Terms of

Service. Papa Depo.36:7-17; 48:3-19. If Defendant finds video files that violate its terms of

service, Defendant takes measures to remove such files from its system. *Id*. 52:5-53:4. When

Defendant permitted sexually explicit video files on its system, Defendant reviewed files to ensure

that all sexually explicit files were marked as adult and changed the setting if necessary (*Id*. 53:5-

18) and also marked adult videos as "gay" or "straight". *Id*. 240:6-245:17. Defendant can even

remove video files from a user's home computer if the user used the Veoh Client to download the

file. Dunning Depo. 98:4-10; Papa Depo. 95:21-25.

Moreover, Defendant has the ability to filter and prevent content from appearing on

prominent portions of the website like the front page or featured videos. Dunning Depo. 136:9-

137:8. Shapiro Depo 75:3-10, 88:24-89:16. Papa Depo.113:9-24. This filtering can be applied to a

class of videos or an individual video. Dunning Depo. 136:9-137:8. Papa Depo.121:1-122:16 and

Ex. 3.

Defendant also selects videos that its employees find interesting as "Featured Videos". Dunning Depo. 194:17-21; Papa Depo.173:14-174:6. Defendant gives "Featured Videos" special treatment in visual design and sometimes they automatically play on the home page as soon as a user navigates to www.veoh.com. Papa Depo.172:18-173:7. Dunning Depo. 197:13-198:2. Defendant collects data about users' viewing habits and when a user comes to the website, the system immediately begins to play a video file the user might be interested in based on his past viewing habits. Dunning Depo. 198:7-13.

All of these factors evidence Defendant's intense interest in the content on www.veoh.com, as well as Defendant's definitive ability to affect and control that content and how the content appears.

### III. PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT

A party seeking summary judgment has the initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions, on file together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  Once the moving party has met its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [in question]." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). "The mere existence of a scintilla of evidence in support of the [opposing party's] position will be insufficient[.]" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). "No longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." Cal. Arch. Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987). As argued *infra*. there are no genuine issues of material fact in dispute with regard to liability in this matter and thus Plaintiff is entitled to summary judgment on issue of liability.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
C-06-03926 (HRL)

## IV.    PLAINTIFF OWNS AND HAS REGISTERED THE COPYRIGHTS TO THE INFRINGED WORKS

"As a threshold question, a plaintiff who claims copyright infringement must show: (1) ownership of a valid copyright; and (2) that the defendant violated the copyright owner's exclusive rights under the Copyright Act. 17 U.S.C. § 501(a) (2003)(Cited in *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004)). *See also*, *Feist Pub'lns, Inc. v Rural Tel. Serv. Co.,* 499 US 340,361 (U.S. 1991). Plaintiff has testified that it holds the copyrights in the works and has also produced copies of the relevant certificates of registration. Ruoff Decl. ¶2, Ex. A. "In any judicial proceedings the certificate of a registration […] shall constitute *prima facie* evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. §410(c). *Transgo, Inc. v. Ajac Transmission Parts Corp.,* 786 F.2d 1001, 1019 (9th Cir. 1985); *Perfect 10, Inc. v. Cybernet Ventures , Inc.*, 213 F. Supp. 2d 1146, 1166 (C. Cal. 2002). S*ee also, Los Angeles News Serv. v. Reuters TV Int'l*, 942 F. Supp. 1275, 1283 (CD Cal. 1996)(Citing *Nimmer on Copyright* § 12.11[3] at 12-163, 171-74 (1995).  Defendant has offered no evidence challenging Plaintiff's ownership of the works or rebutting the presumption created by the registrations.

## V.    DEFENDANT IS LIABLE FOR DIRECT COPYRIGHT INFRINGEMENT OF PLAINTIFF'S WORKS

"Infringement occurs when a defendant violates one of the exclusive rights of the copyright holder. 17 U.S.C. § 501(a)." *Religious Tech. Ctr. v. Netcom On-Line Commun. Servs.*, 907 F. Supp. 1361, 1367 (N. Cal. 1995)("*Netcom*"). These rights include the right to reproduce the copyrighted work, the right to prepare derivative works, the right to distribute copies to the public, and the rights to publicly perform and publicly display the work. 17 U.S.C. §§ 106(1)-(5). Often these rights are referred to collectively as the right to copy. *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1085 n.3 (9th Cir. 1989).

-10-

1         In *MAI Sys. Corp. v. Peak Computer*, plaintiff produced computer software designed to

2    diagnose and repair computers. *MAI Sys. Corp. v. Peak Computer*, 991 F.2d 511 (9th Cir.

3    1993)("*MAI*"). Defendant, who loaded the software into its computer's random access memory

4    (RAM), argued that there was no infringement because the copy created in the RAM was not

5    "fixed." The Ninth Circuit disagreed, stating that, a "copying" for purposes of copyright law

6    occurs when a computer program is transferred from a permanent storage device to a computer's

7    RAM". *Id.* at 518. Similarly, in the matter before the Court the copies of Plaintiff's works are

8    sufficiently "fixed" on Defendant's servers and are capable of being "perceived, reproduced and

9    otherwise communicated".

10         Subsequent to *MAI, a* court in this district defined a limited set of conditions in which

11    digital files may not be sufficiently "fixed" for a finding a direct infringement, even though a copy

12    of a file appeared on a defendant's computer. In *Netcom*, the court looked at the issue of "whether

13    the operator of a computer bulletin board service ('BBS'), and the large internet access provider

14    that allow[ed] that BBS to reach the Internet, should be liable for copyright infringement

15    committed by a subscriber of the BBS". *Netcom,* 907 F. Supp at 1365. A subscriber to a BBS

16    posted infringing copies of written works directly to the servers of the BBS (through a direct

17    connection via a phone line). The BBS used Netcom as its provider for access to the internet. In

18    finding that the access provider had not directly infringed plaintiff's works, the court noted that

19    Netcom automatically forwarded messages from subscribers onto the Usenet and only *temporarily*

20    (11 days) stores copies on its system. *Id.* at 1367. The court noted that "Netcom's actions, to the

21    extent that they created a copy of plaintiff's works, are necessary to having a working system for

22    transmitting Usenet postings to and from the Internet. The Court was concerned that finding

23    liability in those circumstances would result in "liability for every single Usenet server in the

24    worldwide link of computers transmitting [the posting individual's] message to every other

25    computer." *Id.* at 1370. Thus the court ruled that under those circumstances, the defendant must

26    engage in some further volitional or causal elements in order for the copying to the hard drive to

27    be considered a direct infringement. *Id.* at 1382.

28

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
C-06-03926 (HRL)

Here, Defendant is not merely holding a file on its servers long enough to pass it on to other users. The files are maintained indefinitely so that Defendant may make them available as part of the programming for its Internet Television Network in order to earn advertising revenue.

In *CoStar Group, Inc. v. LoopNet, Inc*., the Fourth Circuit Court of Appeals further explained the principles set forth in *Netcom,* writing, "When an electronic infrastructure is designed and managed as a conduit of information and data that connects users over the Internet, the owner and manager of the conduit hardly "copies" the information and data in the sense that it fixes a copy in its system of more than transitory duration. Even if the information and data are "downloaded" onto the owner's RAM or other component as part of the transmission function, that downloading is a temporary, automatic response to the user's request, and *the entire system functions solely to transmit the user's data to the Internet*. Under such an arrangement, *the ISP provides a system that automatically transmits users' material but is itself totally indifferent to the material's content*."  *CoStar Group, Inc. v. LoopNet, Inc.*, 373 F.3d 544, 550-501 (4th Cir. 2004)("CoStar"). (Emphasis added). The Fourth Circuit's opinion in *CoStar* does not discus how long the photographic images remained on the defendant's servers, but the opinion of the court as reflected above clearly indicates a reliance on the principle that permanent copies are to be considered "fixed" and thereby constitute direct infringement. Any other interpretation would be entirely at odds with the definition of 'fixed' set forth at 17 U.S.C. §101 and would represent a departure from of Judge Whyte's holding in *Netcom*.

In *Playboy v. Webbworld*, defendants operated www.netpics.com, a website through which subscribers could view adult images. *Playboy Enters. v. Webbworld Inc.*, 991 F. Supp. 543 (D. Tex. 1997)("*Webbworld*"). To obtain the images, defendants developed software that *automatically* scanned adult oriented Internet newsgroups, located digital images and copied them to its servers. The software *automatically* created thumbnails of the images (re-sized versions of

the original versions) which subscribers could review by and through www.netpics.com. *The entire process was automated.* By clicking on the thumbnails, subscribers could view the full sized images residing on defendant's servers or download those images to their home computers. Relying in part on *MAI*, and differentiating the facts from *Netcom*, the Court found that these actions constituted a direct infringement of plaintiff's works. *Id. at* 551. Webbworld "reproduced" the works by creating the thumbnails and by copying the full sized images to its hard drives and Webbworld "distributed" the works by allowing its subscribers to download the photographs to their home computers. *Id. See also, Kelly v. Arriba Soft,* 336 F.3d 811 (9th Cir. 2003)(direct infringement where search engine stored and displayed results in the form of thumbnail images, but defendant's actions were fair use for reasons which do not apply here).

The defendant in *Playboy v. Hardenburgh* encouraged users to upload adult photographs which it in turn made accessible to the subscribers of its BBS. *Playboy Enters v. Russ Hardenburgh, Inc.* 982 F. Supp. 503(E.D. OH 1997) *("Hardenburgh")*. The court found direct infringement where defendant's policy of encouraging subscribers to upload files, including adult photographs" and "[d]efendants' policy of using a screening procedure in which [defendant] *viewed* all files in the upload file and *moved them* into the generally available files for subscribers. *Id.* at 513 (emphasis in the original). Similarly, Defendant in this matter encourages users to upload files. Then Defendant reviews those files and moves them to locations where they are generally available. The *Hardenburgh* Court squared its ruling with *Netcom*, finding that the defendant in *Hardenburgh* had engaged in the necessary additional volitional acts to find direct infringement.

Defendants in the matter before the Court go even further than the defendant in *Hardenburgh*. First, Defendant reviews or screens files by only accepting files which users agree

-13-

to license to Defendant to be exploited on to its system. Shapiro Depo. 23:6-14; Papa Depo. 12:2-5, 31:14-19. Then Defendant reviews files to ensure they are video files capable of being shown on its system. Papa Depo. 12:10-17:21. The files Defendant accepts are then processed in the manner described *supra* including the creation of a new version in Flash® video format. (See §II-D *supra)*. Defendant moves all of the Flash® video files it creates onto Defendant's Preview Servers (where they are available to the public), and then Defendant manually reviews them, corrects indexing errors, adds information if needed and cancels videos files if they violate Defendant's Terms of Use or Acceptable Use Policy. Papa Depo. 36:7-17; 48:3-19, 52:5-53:4. The fact that Defendant moves files onto the publicly viewable portion of its system before completing its review and removing offending files, should not be considered any different from completing the review before moving files into the publicly viewable area, as was the case in *Hardenburgh*. These facts, "transform [Defendant] from passive providers of a space in which infringing activities happen to occur to active participants in the process of copyright infringement. *Hardenburgh,* 982 F. Supp at 513. "It is  inconsistent to argue that one may actively encourage and control the uploading and dissemination of adult files, but cannot be held liable for copyright violations because it is too difficult to determine which files infringe upon some else's copyrights. *Id.*

The role Defendant plays and the actions it takes more closly resemble the defendants in *Webbworld*, *Kelly* and *Hardenburgh* then defendants in *Netcom* and *CoStar.* Defendant is not a conduit storing files temporarily with no interest in the content, and even if it is, Defendant's other volitional acts dictate a finding of direct infringement. Defendant becomes intimately involved in the content by purporting to license its use from the submitting user. Shapiro Depo. 23:6-14, 24:6-26:18. Defendant not only stores video files submitted by users, but it also creates new files in several different formats (Flash®, .jpg) so that Defendant can further exploit the video files. Papa

-14-

Depo. 154:23-155:24. Defendant maintains on its servers a large and complete index database which helps users locate the video files they wish to view. Dunning Depo.22:18-21. The index database even makes recommendations as discussed above. (See §II-C, *supra.*)

To the extent Defendant has designed its system so that the infringing acts occur automatically, *Webbworld* and *Arriba* make it clear that such built-in automation does not absolve otherwise infringing activity. Referring to defendant's automated system in *Playboy*, the court wrote, "having developed and launched the ScanNews software for commercial use, [defendant] cannot now evade liability by claiming helplessness in the face of its 'automatic' operation." *Webbworld, 991 F. Supp.* at 553. Any other approach would simply encourage would-be infringers to develop automated systems specifically in order to avoid liability for any infringement, regardless of any factors that would otherwise give rise to such liability.

Specifically, Defendant directly infringed on Plaintiff's exclusive rights under 17 U.S.C. §106 in the following ways.

A.  **Defendant Has Infringed on Plaintiff's Exclusive Right to Reproduce the Works in Copies (17 U.S.C. §106(1))**

"The Copyright Act defines 'copies' as 'material objects, other than phonorecords, in which a work is fixed by any method now known or later developed, and from which the work can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device'. 17 U.S.C. § 101. "A work is 'fixed' in a tangible medium of expression when its embodiment in a copy or phonorecord, by or under the authority of the author, is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration." *MAI Sys. Corp. v. Peak Computer*, 991 F.2d 511, 517-518 (9th Cir. 1993)(*Citing* 17 U.S.C. §106).

Defendant invites individuals to anonymously submit and license video files to Defendant and then copies the video file in its original format to its server and makes the copy available for

users to download using the Veoh Client. Dunning Depo. 40:5-11. Defendant also sends an additional copy of the file to Defendant's Flash® conversion servers (Dunning Depo. 47:3-48:1) where it creates new copies of the works in Flash® format. Papa Depo. 125:7-12. These actions clearly constitute a reproduction of Plaintiff's works and a direct infringement of Plaintiff's copyrights.

**B.   Defendant Has Infringed on Plaintiff's Exclusive Right to Prepare Derivative Works Based Upon the Works.  (17 U.S.C. §106(2))**

Section 101 of the Copyright Act defines a derivative work as "a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, *abridgment*, *condensation*, or any other form in which a work may be recast, transformed, or adapted." 17 U.S.C. §101 (emphasis added). Copying the substance of a design in a different medium is prohibited under the copyright act. *Walco Products, Inc. v. Kittay & Blitz, Inc*., 354 F. Supp. 121 (D.N.Y. 1972).

Once Defendant acquires a video file, Defendant creates a series of still images taken from individual frames of the video file. Papa Depo. 155:16-24. Using proprietary software, Defendant selects and extracts individual frames, uses those extracted frames to create .jpg image files (*Id*. 159:24-160:6), and stores the newly created .jpg files its servers. *Id*.161:8-13. (See §II-D, *supra*.)

Once a user has navigated to the video details page for any given video file, he may click on a tab labeled "screen captures" and view the corresponding .jpg files defendant created. Papa Depo.160:17-161:7. The use of these derivative works in the form of still .jpg images is entirely consumptive as they serve no purpose other than the viewing pleasure of the user.

In *Perfect 10 v. Amazon* defendant Google's[1] software automatically crawled the internet and located images which it copied in a reduced size. Google stored these reduced-sized images, commonly referred to as thumbnails[2] in a database which it maintained on its servers. Google then displayed these images in response to searches performed using its browser interface. The Ninth Circuit found theses acts to be direct infringement noting that, "[b]ecause Google initiates and controls the storage and communication of these thumbnails images, we do not address whether an entity that merely passively owns and manages an Internet bulletin board or similar system violates a copyright owner's display and distribution rights when the users of the bulletin board or similar system posts infringing works, contrasting the facts in *Amazon (Google)* to those in *CoStar*. *Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701 n.6 (9th Cir. 2007).

Defendant's actions are similar to Google's in this regard. However, unlike Google who simply reduced the size of *existing* .jpg files, Defendant created new works transforming the content from video files into still images in a new file format. Defendant's users neither request that Defendant create the still frame .jpg files, nor are they informed that Defendant will do so. Defendant, on its own volition, determines which frames from the original video file it will use, how many still-frame .jpgs it will create, what the size and resolution of the images will be and how Defendant will use or display the new files it creates, if at all.

## C.  Defendant Has Infringed on Plaintiff's Exclusive Right to Distribute Copies of the Works to the Public (17 U.S.C. §106(3))

Distributing unlawful copies of a copyrighted work violates the copyright owner's distribution right and, as a result, constitutes copyright infringement. *Hotaling v. Church of Jesus Christ of Latter-Day Saints*, 118 F.3d 199, 203 (4th Cir. 1997). Placing unauthorized copies of

---

[1] The district court consolidated Perfect 10's actions against Google and Amazon. *Perfect 10 v. Google, Inc*., 416 F. Supp. 2d 828 (C. Cal. 2006).

[2] A thumbnail is created by simply resizing an existing image file, as *Google* did. In this matter the new files Defendant creates should not be considered thumbnails; they are actually new works in a new format.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
C-06-03926 (HRL)

work in a publicly accessible portion of a website constitutes a violation of a copyright holder's exclusive right to distribute. *Hardenburgh* 982 F. Supp. at 513.

As explained above, Defendant maintains on its servers a copy of each work in the original format in order to distribute copies to users who elect to download, store and play the video files on their own computers rather than watching the Defendant-created Flash® version of the video file by and through the www.veoh.com website. *Id.* 39:19-40:4. By copying and moving the original file format version of Plaintiff's works to a publicly assessable portion of its website and by helping users locate the infringing files by maintaining its index, Defendant has infringed Plaintiff's exclusive right to distribute its works.

**D.  Defendant Has Infringed on Plaintiff's Exclusive Right to Perform and Display the Works Publicly (17 U.S.C. §106(4) and (5)).**

"The comment to 17 U.S.C. § 106 states that a display is public if 'it takes place 'at a place open to the public or at any place where a substantial number of persons outside of a normal circle of a family and its social acquaintances are gathered.'" *Hardenburgh* 982 F. Supp. at 513 (citing H.R.Rep.No. 1476, 94th Cong., 2d Sess. 64 (Sept. 3., 1976), reprinted in U.S. Code Cong. & Admin. News 5659, 5677).

Defendant transcoded Plaintiff's video files into Flash® video format, and stored the newly created video files on Defendant's servers along with newly created still images in .jpg format as discussed *supra*. Any member of the public could than view the infringing Flash® and .jpg files on www.veoh.com, thus Defendant infringed Plaintiff's exclusive right to perform and display the works publicly.

All of Defendant's actions as described above represent acts of direct copyright infringement.

## VI.     DEFENDANT IS VICARIOUSLY LIABLE FOR INFRINGEMENT OF PLAINTIFF'S WORKS

Even if some of the infringing acts could be deemed to have been performed entirely by Defendant's users rather than by Defendant itself, Defendant is still liable for the infringing acts under secondary infringement doctrines of vicarious infringement and contributory infringement. These doctrines have some similarities but have a different genesis and are comprised of different elements. *See e.g. Demetriades v. Kaufman*, 690 F. Supp. 289, 292 n.5 (S.D.N.Y. 1988). A defendant is vicariously liable if it "has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities." *Napster* I, 329 F.3d at 1022, (quoting *Fonovisa*, 76 F.3d at 262). "When the right and ability to supervise coalesce with an obvious and direct financial interest in the exploitation of copyrighted materials – even in the absence of active knowledge that the copyright monopoly is being impaired – the purpose of the copyright law may be best effectuated by the imposition of liability upon the beneficiary of the exploitation." *Shapiro, Bernstein & Co. v. H.L. Green Co.,* 316 F.2d 304, 307 (2d Cir. 1963).

"The Supreme Court has recently offered (in dictum) an alternate formulation of the test 'One…infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it'" *Perfect 10, Inc. v. Visa Int'l Service Asso., et al.*, No. 05-15170, 2007 U.S. App. LEXIS 15824, 15831 (9th Cir., July 3, 2007)(citing *Grokster*, 545 U.S. at 930). Defendant is clearly the beneficiary of the unauthorized exploitation of Plaintiff's works and clearly had the right and ability to supervise the infringing activity, thus it is Defendant's legal duty to police its system and take whatever measures it can to stop or reduce infringement from occurring thereon.

### A.  Defendant Receives a Direct Financial Benefit from the Infringing Acts of Its Users.

Courts have uniformly held that the "financial benefit" element of vicarious infringement is met when the infringing activity serves to draw customers. *Napster I*, 239 F.3d at 1023, quoting *Fonovisa*, 76 F.3d at 263-64 (infringing activities "enhance the attractiveness of the venue to potential customers."); *In Re: Aimster Copyright Litigation*, 252 F. Supp. 2d 634,655 (N.D.Ill. 2002)(accord); *PolyGram Int'l Publishing, Inc. v. Nevada/TIG, Inc.*, 855 F. Supp. 1314, 1333 (D. Mass. 1994)(trade show participants "derived a significant financial benefit from the attention" attendees paid to the infringing music being played).  "There is no requirement that the draw be 'substantial'". *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004).

Defendant's business model relies on people visiting Defendant's website to view advertising. Shapiro Depo. 59:18-62:23. Users come to the website for one main reason: to view video files. Defendant has admitted that the more content available on the website, the higher the draw for potential users. Shapiro 61:15-62:23; Styn Depo. 30:11-24.

At the time of the infringements, free sexually explicit video files were particularly alluring to many users visiting Defendant's website (Shapiro Depo. 63:16-64:1; Bilger Depo. 35:3-36:12) and Veoh users were particularly interested in gay adult content. Papa Depo. 238:24-239:20, Ex16. In fact, in June of 2006, the same month that Plaintiff discovered the infringing copies of its works on www.veoh.com and filed this action, the amount of interest in sexually explicit material was so high that Defendant, concerned it would affect its ability to attract advertisers and investors, blocked public access to all sexually explicit material on its site. Bilger Depo. 33:9-35:2; Shapiro Depo. 64:2-66:24.

Plaintiff's works were among the sexually explicit video files drawing users to www.veoh.com. In fact, information available from the website indicated that users viewed one of

-20-

Plaintiff's works nearly ten thousand (10,000) times. Ruoff Decl. ¶17, Ex. D. The counter on each

video details page indicated that each of Plaintiff's works was viewed on Defendant's website

numerous times. *Id*.

Upon Defendant's removal of all sexually explicit video files (including Plaintiff's works),

traffic to www.veoh.com dropped (Shapiro Depo. 71:5-8) and Defendant received complaints

from its users. Papa Depo. 201:10-202:17 and Ex.11. This further evidences the draw created by

access to free sexually explicit material including Plaintiff's works.

**B.    Defendant Had the Right and Ability to Control the Infringing Activity of Its
        Users.**

Defendant had the right and ability to control the activity of its users. In *Napster I*, the

Ninth Circuit reaffirmed earlier decisions, ruling that "[t]he ability to block infringers' access to a

particular environment for any reason whatsoever, is evidence of the right and ability to

supervise." *Napster I*, 239 F.3d at1023; See *Fonovisa*, 76 F.3d at 262 (defendant "had the right

and ability to terminate vendors for any reason" and "controlled the access of customers to the

swap meet area."); *Shapiro, Bernstein*, 316 F.2d at 306-08)(element satisfied where defendant

department store had "unreviewable discretion" to terminate employees of its concessionaires);

*Aimster,* 252 F. Supp. at 642 (Terms of Service gave Defendant's right to terminate users).

Because "the reserved right to police *must be exercised to its fullest extent*" *Napster I*, 239 F.3d at

1023, (emphasis added), a party "may be vicariously liable when it fails to affirmatively use its

ability to patrol its system and preclude access to potentially infringing files listed in its search

index." *Id*. at 1027.

Where a defendant is "in a position to police infringing conduct," its "failure to police the

conduct" gives rise to vicarious liability. *Gershwin*, 443 F.2d at 1162-63. Just because Defendant

chooses not to fully exercise its duty to supervise the activities of the individuals who supply the

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
C-06-03926 (HRL)

content from which Defendant profits, does not mean it does not indeed have the right and ability to do so. There are numerous indications that Defendant held the right and ability to control the infringing actions.

#### i.    The Infringing Activity Occurred on Defendant's Servers and Within Premises Controlled by Defendant.

Defendant is in a unique position in that the infringing activity occurred within a closed environment over which Defendant exercises complete dominion. The infringing Flash® version of each of Plaintiff's works was created on Defendant's servers with Defendant controlled software. Papa Depo. 155:5-15. The new versions were stored on Defendant's servers and were located using an index that also resided wholly on Defendant's servers. *Id*.124:21-129:18.

This goes far beyond what previous courts have found to be indicative of control. In *Napster I* the Court found sufficient control for a finding of vicarious infringement when only the index listing the infringing files resided on defendant's servers and was therefore in defendant's control. *Napster I,* 239 F.3d at 1024. The infringing files themselves were located on the home computers of the users and were never transferred to Napster's servers. *Id*.

Moreover, Defendant even has control over copies of the files that have been transferred to the home computers of its users. When Defendant decides that it no longer wishes any given video file to be available through its system it can search the home computer of every user who has downloaded the Veoh Client (if the computer is still connected to the Internet) and can physically remove any of the video files the user downloaded from Defendant. Dunning Depo. 98:4-10; Papa Depo. 95:21-25. Defendant needs no reason or excuse to delete files from its system; it can do so unilaterally for whatever reason it sees fit. Shapiro Depo. 27:16-28:13 and Ex. 5. This is clearly indicative of Defendant's far reaching control over the content residing on its system.

**ii. Defendant Purported to License All Works Appearing on Its System, Including Plaintiff's Works.**

The Terms of Use, which submitters had to agree to (Papa Depo. 12:2-5, 31:14-19) included the following licensing provision:

> "You expressly acknowledge and agree that any User Material that You make available on the Veoh Service may be made freely available by Veoh through the Veoh Service, including without limitation for download by others, and that this permission is made and granted in consideration of Your use of the Veoh Service and is nonexclusive, perpetual, royalty-free, irrevocable and transferable." Ruoff Decl. ¶9, Ex. B.

It is worth noting that the license grants *Veoh* the right to make the work available through the Veoh System, thereby acknowledging that Defendant must take further action to achieve the final goal of making the video files available to other Veoh users. Defendant sought and obtained this purported license for a reason; without a valid license, Defendant could not exploit the works without infringing upon the exclusive rights of the copyright holder. 17 U.S.C. §106. Moreover, the license Defendant obtained was both *perpetual* and *irrevocable*, meaning that Defendant had so much control over the work that it could continue to exploit the works even if the submitting user requested that they stop.

However, the users from whom Defendant acquired Plaintiff's works had no authority to grant a license to Defendant, and Defendant had no reason to believe the anonymous licensor was so authorized. It defies logic to argue that Defendant does not have the right and ability to control the infringing activity, when Defendant bargained for the right to engage in the activities exclusive to the copyright holder and it is hard to imagine an element more indicative of control than a license to exploit a work. Before obtaining and exploiting such a license it is (and always has been) incumbent upon the licensee to investigate whether or not the licensor controls the rights he is purporting to license. *Netcom*, 907 F. Supp. at 1370 ("[C]opyright is a strict liability statute").

-23-

Defendant could have exercised its right to police the environment it controlled by refraining from licensing works from an individual without obtaining more information from the licensing individual such as the licensor's name and address, the name and address of the producer or copyright holder of the work and/or information as to how the licensing individual obtained authority to grant a license to the work. Or Defendant could have simply followed federal laws *requiring* sexually explicit material to be labeled with the producer's business address. 18 U.S.C. § 2257(f)(4). Rather, Defendant turned a blind eye. The only attempt Defendant made to ensure the submitting individual was authorized to license the work was to force the user to click a box saying he read and agreed to a long list of terms in Defendant's Terms of Use which included a term that required the user to have the right to offer the work to Veoh. Defendant's failure to take further measures to limit infringement (when it had the right and ability to do so) produced a predictable result.

### iii. Defendant Reserves and Exercises Absolute Editorial Control over the Video Files Appearing on Its System

Defendant takes a keen interest in the material that appears on its site and reserves the right to monitor and remove any material which it, in its sole discretion, it deems as inappropriate. Shapiro Depo. 27:16-28:13 and Ex 5. Defendant describes itself as an Internet Television Network (*Id*. 53:24-54:1), and just like a traditional television station, Defendant has an interest in the content it makes available to its viewing audience as described in detail above. (See § II-G *supra*.) More and better content leads to a higher viewing audience, thereby increasing advertising revenue potential. *Id*. 61:15-62:23. Therefore, Defendant actively seeks relationships with content producers such as Turner Broadcasting, CBS, and others. *Id*. 43:12-24.

The most obvious example of editorial control exercised by Defendant is in its current policy prohibiting sexually explicit material on its System. Allowing a certain type of content one

-24-

day and prohibiting it the next, and effectively removing that content from the system

instantaneously, certainly is indicative of a high level of control.

Defendant reserves for itself editorial decision making with regard to how prominently it

will display a video file on the www.veoh.com website. For example, if a user complained about a

religiously offensive video file, Defendant could allow the video to remain on the system, but

could blocked it from being viewed on prominent pages. Dunning Depo. 136:9-137:8; Papa Depo.

113:9-24. On the other hand, Defendant showcases video files it deems to be of higher quality by

selecting them for the "Featured Video" section. Dunning Depo. 194:17-21.

### iv. Defendant Reviews Files on Its System for Terms of Use Violations Including Copyright Violations.

Defendant acknowledges that early plans called for an "eyes on" review of every video

file it acquired from users through the internet based user interface, in order to cull out videos that

violated Defendant's Terms of Use including its copyright policies. Shapiro Depo. 57:20-58:2.

Styn Depo. 56:14-63:2. In spite of numerous statements to the press, to investors and on

Defendant's website that Defendant had such a policy, Defendant now claims that the procedure

was never in effect. Defendant contends that one of reasons this policy was not implemented was

"scalability" i.e., it became impractical when Defendant started reviewing large numbers of

material. Shapiro Depo. 84:13-85:11. Nonetheless, Defendant admits that during the time of the

infringements, it reviewed video files on its system *after* they were processed and made available

to the public. The review included checking for the proper content rating as discussed above (Papa

Depo. 203:4-15), checking for violent videos (*Id*. 94:21-25), child pornography (Id. 96:1-6),

bestiality (*Id*.) and other Terms of Use violations, including copyright infringement (*Id*. 96:10-15).

Defendant removed at least some video files because employees thought the content might be

infringing. Papa Depo. 96:10-97:21.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
C-06-03926 (HRL)

**v. Defendant Created and Maintained the Index Used to Organize and Locate Video Files on Its System Including the Infringing Copies of Plaintiff's Works.**

Defendant controls the infringing activity by creating and maintaining an index of all of the files on its system, including infringing files. Individuals submitting a video file initially enter information about the video file, but Defendant reviews those entries and makes adjustments when necessary. Papa Depo. 110:10-111:16. For example, Defendant reviewed and changed the content rating for files (Papa Depo. 203:4-15), added "tags" so that searches would distinguish between "gay" sexually explicit video files and "straight" sexually explicit video files (*Id*. 240:6-245:17), and changed misleading titles or descriptions to more accurately describe the content of the associated video file. *Id*. 110:10-111:16.

Defendant has the right and ability to completely control the material appearing on its system, including the infringing copies of Plaintiff's works.

**VII. DEFENDANT IS CONTRIBUTORILY LIABLE FOR INFRINGEMENT OF PLAINTIFF'S WORKS**

Contributory infringement consists of the following elements: "[O]ne who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another." *A&M Records v. Napster*, 239 F.3d 1004, 1019 (N.D. Cal 2001)(Napster I); *accord Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996). For the first element, constructive knowledge is sufficient. *Napster I*, 239 F3d at 1020 ("Contributory liability requires that the secondary infringer 'know of or have reason to know' of direct infringement."), *citing Cable/Home Communication Corp. v. Network Prod., Inc.*, 902 F.2d 829, 846 n.29 (11th Cir. 1990); *see also, e.g., Sega Enters., Ltd. v. MAPHIA*, 948 F. Supp. 923, 933 (N.D. Cal. 1996).

### A. Defendant Induced, Caused, and Materially Contributed to Direct Infringement.

In *Napster I*, Defendant maintained an index on its servers that users employed to help locate infringing files on other users' computers. The infringing files never resided on Napster's servers.  The Court ruled that the maintenance of the index alone was sufficient to find a material contribution. "Napster is an integrated service designed to enable users to locate and download MP3 music files." *Napster I*, 239 F.3d at1022 (citing the District Court). "[W]ithout the support services defendant provides, Napster users could not find and download the music they want with the ease of which defendant boasts." *Id*. Thus the Court held that Napster provided "the site and facilities for direct infringement. *Id*.

Defendant here goes even further, at least occasionally reviewing the index to make sure that items are properly categorized. Papa Depo. 203:4-15, 240:6-245:17. Moreover, Defendant's index does not point users to infringing files on unassociated computers, rather the index points users to infringing files that reside on Defendant's own servers. Dunning Depo. 22:18-21, 40:5-11. More broadly, Defendant designed, maintained and operated all of the other elements which comprised the Veoh System, as described *supra*. All of these actions represent further contribution to the infringement that resulted by and through Defendant's system.

### B. Defendant Had Direct Knowledge or Constructive Knowledge of the Infringement of Plaintiff's Works.

Courts have found constructive knowledge for the purposes of establishing contributory infringement in a wide variety of situations. *See, e.g. Hardenburgh*, 982 F.Supp. at 514 (constructive knowledge because "Playboy Magazine is one of the most famous and widely distributed adult publications in the world"); *RSO Records, Inc. v. Peri,* 596 F.Supp.849, 858 (S.D.N.Y. 1984)(knowledge where "the very nature of [the product at issue] would suggest

infringement to a rational person."); *Universal City Studios, Inc. v. American Invsco Management, Inc.*, 217 U.S.P.Q. 1076, 1077 (N.D. Ill. 1981)(fact that motion picture was just released in theaters supported inference of actual or constructive knowledge that videocassette was infringing); *see also Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1162-63 (2d Cir. 1971)(general knowledge that "copyrighted works were being performed at [the concert] and that neither the local association not the performing artists would secure a copyright license.").

Defendant receives large numbers of notices from copyright owners requesting that it remove infringing files from its website and knows infringement occurs thereon. A common sense examination of the infringing files of Plaintiff's works submitted to www.veoh.com, should immediately raise red flags. First, each of the works is clearly professionally made employing professional cameras, multiple camera angles, film industry lighting, professional models and the sets and locations indicative of professional rather than amateur productions. Ruoff Decl. at ¶3. In fact, many of the works received industry awards. *Id*. ¶4. Only one of the works was marked with any indicia of ownership. *Id*. at ¶16. Without any indication of who produced the work or where one might go to purchase the works, the rightful copyright holder would receive no benefit from the appearance of the works on Veoh.com and it simply makes no sense for the copyright holder to allow the works to be copied, distributed and/or displayed by and through Defendant's system in this manner.

Also, the user information for the individuals who initially provided the infringing works to Defendant was not indicative of individuals associated with a professional adult film producer or licensee thereof. See user names on Ruoff Exhibits D and E. Defendant admits that factors like quality and length of the movie and an inconsistent user name can be indicative that a user does

-28-

not have the proper authorization to provide a video file to Defendant. Dunning Depo. 126:17-127:10. Papa Depo. 100:4-105:21. Remarkably, the one user page Plaintiff was able to document indicates the submitting user was a seventeen-year-old boy from Herod, Illinois. Ruoff Decl. ¶21. This individual did not even have the legal right to view this material, much less produce and distribute it. Again, Defendant should have been alerted that this user was not the copyright holder and was not authorized to provide the work to Defendant.

Finally, and perhaps most significantly, Defendant knowingly ignored federal laws requiring sexually explicit material to be labeled with the date of production and the location of age verification records for all performers. (18 U.S.C. §2257 (f)(4)). Anyone transferring such material, including Defendant is required to ensure that such a label is affixed. Defendant admits to knowledge of the law, yet offers no explanation as to why it ignored it. Papa Depo. 192:12-196:3; Styn Depo. 43:1-48:13; Shapiro Depo. 64:2-21; Dunning Depo. 154:24-156:13. Just as a merchant accepting a shipment of cigarettes without the federally required warning label or tax stamp, would have reason to question the authenticity of those cigarettes, an absent §2257 label on a sexually explicit video file is a clear indication that the video files were illicitly obtained. *See Louis Vuitton S.A. v. Lee,* 875 F.2d 584, 590 (7th Cir. 1989) (In a trademark matter, "[I]t is enough . . . that the defendant failed to inquire . . . because he was afraid of what the inquiry would yield."). Here, Defendant should have asked questions, before it acquired sexually explicit content that failed to conform to the federal labeling law and transferred that material in further violation of the law.

Plaintiff's copyright registrations also provide constructive knowledge of Plaintiff's ownership of their copyrighted works.  17 U.S.C. §205(c); *Saenger Org., Inc. v. Nationwide Ins.*

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
C-06-03926 (HRL)

*Licensing Assocs., Inc.,* 119 F.3d 55, 66 (1st Cir. 1997)("A copyright registration

certificate…serves to put the world on constructive notice as to the ownership of the copyright").

### VIII.   DEFENDANT HAS NOT PRODUCED EVIDENCE TO SUPPORT ANY OF ITS AFFIRMATIVE DEFENSES.

Where the defendant raises affirmative defenses and plaintiff moves for summary

judgment, plaintiff need not produce any evidence.  It may simply point out the absence of

evidence from the defendant.  *Fontenot v. Upjohn, Co.*, 780 F2d 1190, 1195 (5th Cir. 1986); *Zands*

*v. Nelson*, 797 F.Supp. 805, 808 (SDCA  1992).  Defendant has not produced sufficient evidence

to support any of its affirmative defenses.

### IX. CONCLUSION

Defendant engaged in direct infringement of Plaintiff's works. In addition Defendant is

liable as a contributory and vicarious infringer for the reasons set forth above. Defendant has not

set forth facts to support any of its affirmative defenses.  Therefore, Plaintiff requests that the

Court rule that Defendant is liable for the copyright infringement alleged in this action.

Dated: *July 31, 2007*

/s/ *Gill Sperlein*

_____

GILL SPERLEIN
THE LAW OFFICE OF GILL SPERLEIN
Attorney for Plaintiff Io Group, Inc.

-30-

## CERTIFICATE OF SERVICE

I am a resident of the State of California, over the age of 18 years , and not a party to the action within.  My business address is 69 Converse Street, San Francisco, California, 94103.  On July 31, 2007 I served the within documents:

- **PLAINTIFF IO GROUP INC.'S NOTICE AND MOTION FOR SUMMARY JUDGMENT**
- **GILL SPERLEIN'S DECLARATION IN SUPPORT OF PLAINTIFF IO GROUP INC.'S MOTION FOR SUMMARY JUDGMENT**
- **KEITH RUOFF'S DECLARATION IN SUPPORT OF PLAINTIFF IO GROUP INC.'S MOTION FOR SUMMARY JUDGMENT**
- **[PROPOSED] ORDER GRANTING PLAINTIFF IO GROUP INC.'S MOTION FOR SUMMARY JUDGMENT**

by causing a true and correct copy of the above to be placed with God's Speed Delivery Service for personal delivery in a sealed envelope with postage prepaid, addressed as follows:

JENIFER A. GOLINVEAUX
WINSTON & STRAWN LLP
101 CALIFORNIA STREET, SUITE 3900
SAN FRANCISCO, CA  94111-5894

UNITED STATES DISTRICT COURT
280 South First Street
San Jose, CA  95113

E-Filing Chambers Copy
*Io Group, Inc. v. Veoh Networks, Inc.*,
C-06-06-3926 (HRL)

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on July 31, 2007.

*/s/ Eric Burford*

_____
Eric Burford

I hereby attest that this is the declaration of Eric Burford and the original with Eric Burford's holographic signature is on file for production for the Court if so ordered, or for inspection upon request by any party.  Pursuant to the laws of the United States, I declare under penalty of perjury the foregoing is true and correct.

Dated: *July 31, 2007*

/s/ Gill Sperlein_____
GILL SPERLEIN,
Counsel for Plaintiff Io Group, Inc.