1   Michael S. Elkin (admitted *pro hac vice*)
    WINSTON & STRAWN LLP
2   200 Park Avenue
    New York, NY 10166-4193
3   Telephone:    212-294-6700
    Facsimile:    212-294-4700
4   Email:  melkin@winston.com

5   Jennifer A. Golinveaux (SBN: 203056)
    Matthew A. Scherb (SBN: 237461)
6   WINSTON & STRAWN LLP
    101 California Street
7   San Francisco, CA  94111-5894
    Telephone:    415-591-1000
8   Facsimile:    415-591-1400
    Email:  jgolinveaux@winston.com; mscherb@winston.com

9
    Attorneys for Defendant
10  VEOH NETWORKS, INC.

11                  **UNITED STATES DISTRICT COURT**

12              **NORTHERN DISTRICT OF CALIFORNIA**

13                      **SAN JOSE DIVISION**

14  IO GROUP, INC.                    |  **Case No. C 06-3926 HRL**

15          Plaintiff,                |  **DEFENDANT VEOH NETWORKS, INC.'S
                                      |  OPPOSITION TO PLAINTIFF'S MOTION
16      vs.                           |  FOR SUMMARY JUDGMENT**

17  VEOH NETWORKS, INC.               |  Date:      September 4, 2007
                                      |  Time:      10:00 a.m.
18          Defendant.                |  Place:     Courtroom 2

19

20

21

22

23

24

25

26

27

28

Winston & Strawn LLP
101 California Street
San Francisco, CA  94111-5894

1

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................1

II.     STATEMENT OF ISSUES ................................................................................2

III.    STATEMENT OF FACTS ................................................................................2

IV.     IO'S MOTION IS MOOT IF THE COURT GRANTS VEOH'S PENDING
        MOTION FOR SUMMARY JUDGMENT................................................................3

V.      IO HAS FAILED TO SUBMIT EVIDENCE TO ESTABLISH THE ESSENTIAL
        ELEMENTS OF ITS CLAIMS AND ITS MOTION FOR SUMMARY
        JUDGMENT MUST BE DENIED. ................................................................4

        A.      Io has Failed to Produce Sufficient Evidence of Copying of its Alleged Works .........5

        B.      Veoh Does Not Engage in Direct Infringement................................................7

                1.      Veoh Does Not Act With the Requisite Volition To Be Held Liable
                        for Direct Infringement ................................................................7

                2.      Veoh's Creation of Thumbnails is Also a Fair Use .......................................13

        C.      Veoh is Not Secondarily Liable ................................................................16

                1.      Io has Failed to Submit Evidence of Underlying Infringement by
                        Third Parties................................................................16

                2.      The Evidence Does Not Support Io's Claims of Contributory
                        Infringement................................................................17

                        a.      Veoh Had No Knowledge of the Specific Allegedly
                                Infringing Material at Issue in this Case ................................................17

                        b.      Whenever Aware of Infringements, Veoh Removed Them,
                                and In No Way Contributed to or Induced Alleged
                                Infringement................................................................21

                        c.      Veoh's Website and Software are Capable of Substantial
                                Non-Infringing Uses ................................................................22

                3.      Veoh is Not Vicariously Liable ................................................................22

                        a.      Veoh Lacks the Right and Ability to Control the Allegedly
                                Infringing Activity ................................................................23

                        b.      Veoh Obtained No Financial Benefit Directly Attributable
                                to the Allegedly Infringing Activity ................................................25

VI.     CONCLUSION................................................................................................27

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

ii

# TABLE OF AUTHORITIES

CASES

*A&M Records, Inc. v. Napster, Inc.,*
239 F.3d 1004 (9th Cir.2001) ................................................................. 16-17, 23, 26

*Addisu v. Fred Meyer, Inc.,*
198 F.3d 1130 (9th Cir. 2000) ...................................................................................5

*Adobe Sys. Inc. v. Canus Productions, Inc.,*
173 F. Supp. 2d 1044 (C.D. Cal. 2001) ................................................................25, 27

*Agee v. Paramount Commc'n, Inc.,*
59 F.3d 317 (2d Cir. 1995).......................................................................................13

*Berkla v. Corel Corp.,*
66 F. Supp. 2d 1129 (C.D. Cal. 1999) .......................................................................6

*Bridgmon v. Array Sys. Corp.,*
325 F.3d 572 (5th Cir. 2003) ....................................................................................6

*British Airways Bd. v. Boeing Co.,*
585 F.2d 946 (9th Cir. 1978) ....................................................................................4

*Corbis Corp. v. Amazon.com, Inc.,*
351 F. Supp. 2d 1090 (W.D. Wash. 2004)..........................................................4, 19-20

*CoStar Group, Inc. v. LoopNet, Inc.,*
373 F.3d 544 (4th Cir. 2004) ...........................................................................Passim

*Eastman Kodak Co. v. Image Technical Servs., Inc.,*
504 U.S. 451 (1992)..................................................................................................5

*Ellison v. Robertson,*
357 F.3d 1072 (9th Cir. 2004) .............................................................................22, 26

*Feist Publ'ns, Inc. v. Rural Telephone Serv. Co.,*
499 U.S. 340 (1991)..................................................................................................7

*Field v. Google, Inc.,*
412 F. Supp. 2d 1106 (D. Nev. 2006).................................................................7, 9, 12

*Fonovisa, Inc. v. Cherry Auction, Inc.,*
76 F.3d 259 (9th Cir. 1996) .....................................................................................24

*Funky Films, Inc. v. Time Warner Entm't Co.,*
462 F.3d 1072 (9th Cir. 2006) ...................................................................................7

*General Universal Sys., Inc. v. Lee,*
379 F.3d 131 (5th Cir. 2004) ....................................................................................6

*Hendrickson v. Amazon.com, Inc.,*
298 F. Supp. 2d 914 (C.D. Cal. 2003) .......................................................................4

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

DEFENDANT VEOH NETWORKS, INC.'S
OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
Case No. C 06-3926 HRL

*In re Aimster Copyright Litig.*,
    334 F.3d 643 (7th Cir. 2003) ..................................................................................24

*Kelly v. Arriba Soft Corp.*,
    336 F.3d 811 (9th Cir.2003) .............................................................................. 13-16

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
    545 U.S. 913 (2005).................................................................................... 16-17, 21

*Miller v. Glenn Miller Prod., Inc.*,
    454 F.3d 975 (9th Cir. 2006) ....................................................................................4

*Nat'l Car Rental Sys., Inc. v. Computer Assoc. Int'l, Inc.*,
    991 F.2d 426 (8th Cir. 1993) ..................................................................................13

*Newborn v. Yahoo!, Inc.*,
    391 F. Supp. 2d 181 (D.D.C. 2005) ..........................................................................8

*Nissan Fire & Marine Ins. Co. v. Gritz Cos.*,
    210 F.3d 1099 (9th Cir. 2000) ..................................................................................4

*Parker v. Google*,
    422 F.Supp.2d 492 (E.D. Pa. 2006), *aff'd by* No. 06-3074, 2007 U.S. App. LEXIS 16370
    (3d Cir. July 10, 2007) ........................................................................................7, 12

*Perfect 10, Inc. v. Amazon.com, Inc.*,
    487 F.3d 701 (9th Cir. 2007) .......................................................................... Passim

*Perfect 10, Inc. v. CCBill LLC*,
    __ F.3d __, 2007 U.S. App. LEXIS 12508 (9th Cir. May 31, 2007)...............................19, 24

*Perfect 10 v. Google, Inc.*,
    416 F. Supp. 2d 828 (C.D. Cal. 2006) ................................................................ 18-19

*Perfect 10 v. Visa Int'l Serv. Ass'n*,
    __ F.3d __, 2007 WL 1892885 (9th Cir. July 3, 2007)...............................................24

*Playboy Enters. v. Hardenburgh*,
    982 F. Supp. 503 (N.D. Ohio 1997)................................................................ 10-11, 13

*Playboy Enters. v. Webbworld*,
    991 F. Supp. 543 (N.D. Tex. 1997) ..................................................................10, 13

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*,
    907 F. Supp. 1361 (N.D. Cal. 1995) .................................................................. Passim

*Saenger Org. v. Nationwide Ins. Licensing Assoc.*,
    119 F.3d 55 (1st Cir. 1997)......................................................................................21

*Sega Enters. v. Sabella*,
    No. C 93-04260, 1996 U.S. Dist. LEXIS 20470 (N.D. Cal. Dec. 18, 1996) .................. Passim

*Seiler v. Lucasfilm, Ltd.*,
    808 F.2d 1316 (9th Cir. 1986) ..................................................................................6

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

iv

*Shapiro, Bernstein and Co. v. H.L. Green Co.*,
    316 F.2d 304 (2d Cir. 1963)..............................................................................24

*Shaw v. Lindheim*,
    919 F.2d 1353 (9th Cir. 1990) ...........................................................................6

*Smith v. Jackson*,
    84 F.3d 1213 (9th Cir. 1996) ..............................................................................5

*Sony Computer Entm't Am., Inc. v. Bleem, LLC*,
    214 F.3d 1022 (9th Cir. 2000) .................................................................... 15-16

*Sony Corp. v. Universal City Studios, Inc.*,
    464 U.S. 417 (1984)..................................................................................8, 22

*Sundance Assocs., Inc. v. Reno*,
    139 F.3d 804 (10th Cir. 1998) ..........................................................................20

STATUTES

17 U.S.C. § 101.............................................................................................13

17 U.S.C. § 106(3)...........................................................................................13

17 U.S.C. § 107...............................................................................................14

17 U.S.C. § 205(c)...........................................................................................21

17 U.S.C. § 512(j).............................................................................................3

17 U.S.C. § 512(c)..........................................................................................3-4

18 U.S.C. § 2257............................................................................................20

OTHER AUTHORITIES

Meliville B. Nimmer & David Nimmer, *Nimmer on Copyright*. ...........................................11, 13

Fed. R. Civ. P. 7(b) ............................................................................................2

Fed. R. Civ. P. 56(c) ..........................................................................................4

H.R. Rep. No. 105-551 Part 2................................................................................27

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

DEFENDANT VEOH NETWORKS, INC.'S
OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
Case No. C 06-3926 HRL

1

## I.    INTRODUCTION

2          Plaintiff Io Group, Inc. ("Plaintiff" or "Io") has moved for summary judgment on the issues

3   of Veoh's liability to Io for direct, contributory, and vicarious copyright infringement.  Because Io

4   cannot support the requisite elements of either its direct or indirect claims, its motion should be

5   denied in its entirety.  Moreover, because Veoh's own pending motion for summary judgment, based

6   on its entitlement to DMCA safe harbor from all of Io's claims, would moot Io's motion, the Court

7   need not even reach Io's motion.

8          Even putting aside Veoh's entitlement to safe harbor, this is not a close case.  Veoh is an

9   Internet service provider that allows users to share video content.  Users can upload video content

10  directly to Veoh's website, or by using Veoh's proprietary software.  Regarding Io's claims for

11  direct infringement, the case law makes clear that the Veoh system's automated "copying" of user

12  uploaded content lacks the requisite volition to establish direct infringement.  As this Court

13  recognized in the *Netcom* decision, such actions, to the extent that they create copies, are necessary

14  to have a working system for transmitting user content on the Internet.  To the extent Io seeks to hold

15  Veoh directly liable for the automated generation of thumbnails to assist users in finding such

16  content, Veoh is also protected by the fair use doctrine.

17         Io's claims that Veoh should be held indirectly liable for the actions of its users are equally

18  misplaced.  It is undisputed that Io brought this lawsuit without ever bothering to first notify Veoh of

19  the alleged infringements, and when Io sued, Veoh had already terminated access to all pornographic

20  content, including any of the allegedly infringing material.  There is also no evidence to support that

21  Veoh had the right or the ability to control the allegedly infringing activity or derived a financial

22  benefit from it. There is simply no evidence to support the elements of Io's claims of contributory or

23  vicarious infringement.  To find Veoh indirectly liable on the facts of this case would extend those

24  doctrines beyond all workable boundaries.

25         For these reasons, Veoh asks that the Court deny Io's motion because Io has not and cannot

26  establish the essential elements of its claims, and as moot because Veoh is entitled to DMCA safe

27  harbor.

28

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

1

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

## II.     STATEMENT OF ISSUES

Whether Io's motion must be denied because it has failed to present evidence showing that no reasonable jury could find for Veoh on all of the essential elements of Io's claims for direct and indirect copyright infringement, and whether Io's motion is mooted by Veoh's entitlement to DMCA safe harbor.

## III.     STATEMENT OF FACTS

The background for this case is set forth in detail in Veoh's Motion for Summary Judgment filed July 30, 2007 (Docket No. 77), which Veoh incorporates in this Opposition by reference as if fully set forth herein in accordance with Federal Rules of Civil Procedure 7(b) and 10(c).  The following additional facts are also relevant to this Opposition.

Veoh is an internet service provider that allows users to upload and share videos.[1]  Io admits that Veoh is capable of non-infringing uses,[2] and there is no doubt that Veoh is capable of substantial non-infringing uses.  Users have uploaded and shared hundreds of thousands of videos on Veoh.  To date, Veoh has received notices of alleged copyright infringement in one form or another in connection with less than seven percent of those videos.[3]  In addition to the video content submitted by Veoh users, Dunning Decl. ¶ 4, Veoh has entered into agreements with prominent content providers such as Turner, CBS, Us Magazine, Road and Track Magazine, Car and Driver Magazine, and United Talent Agency to distribute their content on Veoh.[4]

To search for videos on Veoh, users may enter keyword search terms, in response to which Veoh returns a page of search results in a grid, each result identified by a title and a "thumbnail", which is a reduced-size screenshot extracted from a video.  If a user clicks on a specific thumbnail

---

[1] Declaration of Ted Dunning ("Dunning Decl.") ¶ 2.  The Dunning Decl. accompanied Veoh's own motion for summary judgment.

[2] Pl's. Resp. to Def's. First Set of Requests for Admission, attached to the Declaration of Matthew Scherb in Support of Defendant Veoh's Opposition to Plaintiff's Summary Judgment Motion ("Scherb Opp. Decl.") as Exh. A, No. 8.

[3] Declaration of Ted Dunning Submitted in Support of Defendant Veoh Networks, Inc.'s Opposition to Plaintiff's Motion for Summary Judgment ("Dunning Opp. Decl") ¶ 6.

[4] Transcript of May 21, 2007 Deposition of Dmitry Shapiro ("Shapiro Dep. Tr."), attached to the Declaration of Matthew Scherb ("Scherb Opp. Decl.") as Exh. B, 33:17-19, 37:11-16; Pl's. Mot. for Summary Judgment filed July 31, 2007 (Docket No. 78) (Pl's. Mot.) at 7.  For the Court's convenience, all deposition portions cited in this Opposition have been collected in the Scherb Opp. Decl.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

1  on the search results page, he or she will see a "Video Details Page" that contains the video and a

2  link called "Video Screencaps."  Clicking on the "Video Screencaps" link shows the user a set of 16

3  thumbnails of screenshots from the video.[5]  The thumbnails help users search for videos on Veoh's

4  service and give users a quick idea, without having to watch a video, of the video's content.  The

5  creation of these thumbnails is an entirely automated process.[6]  The full-size screenshots underlying

6  the thumbnails never appeared on Veoh.  Papa Dep. Tr. (Day Two) at 161:19-23.

7        Nearly all of the allegedly infringing works at issue in this case are less than a minute in

8  length, and the majority of these were less than about six seconds in length.[7]  Each of Io's alleged

9  works have each been published in a multitude of formats, including on DVDs, VHS tapes, and on

10  Io's internet sites.  Compl. ¶ 2.  Io gives away excerpts of those videos for free on the Internet and

11  has occasionally given away free DVDs to promote its works.[8]

12  **IV.   IO'S MOTION IS MOOT IF THE COURT GRANTS VEOH'S PENDING MOTION
            FOR SUMMARY JUDGMENT.**

14        The Court need not reach the merits of Plaintiff's Motion for Summary Judgment, because

15  Veoh is entitled to safe harbor from all of Io's claims pursuant to section 512(c) of the Digital

16  Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512(c), and has moved for summary judgment

17  on that basis.  If this Court grants Veoh's motion, it will obviate the need to consider Io's motion.

18  As set forth in Veoh's summary judgment motion, if the Court finds that Veoh is entitled to safe

19  harbor, Io will be entitled to no monetary relief and only to the injunctive relief permitted by 17

20  U.S.C. § 512(j), which is moot in this case, as it is undisputed that Veoh had already disabled access

---

[5] Dunning Opp. Decl. ¶ 5; Declaration of Keith Ruoff ("Ruoff Decl.") ¶¶ 13, 26 & Exhs. D, H.  The Ruoff Decl. accompanied Io's motion for summary judgment.

[6] Transcript of May 22, 2007 Deposition of Joseph Papa ("Papa Dep. Tr. (Day Two)"), attached to the Scherb Opp. Decl. as Exh. C, 166:13-17, id. 158 4-8 ("The screen caps feature provided a way to get a little bit more information about the content of the video, prior to downloading it."); Dunning Opp. Decl. ¶ 5.

[7] Plaintiff's Responses to Defendant's Third Set of Requests for Admissions, attached to the Scherb Opp. Decl. as Exh. D, Nos. 65-78.

[8] Pl's. Resp. to Def's. Third Set of Requests for Admission, attached to the Scherb Decl. as Exh. L, No. 64; Transcript of May 25, 2007 Deposition of Keith Ruoff ("Ruoff Dep. Tr."), attached to the Scherb Opp. Decl. as Exh. E, 35:21 ("We do allow trailers to be shown."); id. 44:8-10 ("We do provide free copies of DVD's to reviewers in magazines, to be able to allow them to write reviews of our films."); id. 90:7-9 (discussing Plaintiff's "free week of porn" promotion).

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

1   to all pornographic content, including any of Io's alleged material in June of 2006 before Io filed this

2   lawsuit.  *See* Veoh's Mot. for Summary Judgment at 24 (citing *Corbis Corp. v. Amazon.com, Inc.*,

3   351 F. Supp. 2d 1090, 1111 (W.D. Wash. 2004)).  Similarly, the *Corbis* court faced cross summary

4   judgment motions, defendant's on the ground that it was entitled to section 512(c) safe harbor, and

5   plaintiff's seeking a declaration of liability for copyright infringement.  That court held that

6   defendant was entitled to DMCA safe harbor, obviating the need to consider most issues of liability.

7   351 F. Supp. 2d at 1113 ("Corbis has filed a motion for partial summary judgment on its claims of

8   direct and vicarious copyright infringement . . . .  Once the claims arising from DMCA-protected

9   activity and the claims relating to unregistered images have been culled, only two direct copyright

10  infringement claims. . . remain."); *id.* at 1298 ("The relief sought by Corbis for the alleged

11  infringements is prohibited under the DMCA. As a result, even if Corbis's copyright infringement

12  claims can bare fruit, Amazon's liability protection ensures that the claims will whither on the

13  vine."); *cf. Hendrickson v. Amazon.com, Inc.,* 298 F. Supp. 2d 914, 918 (C.D. Cal. 2003) (granting

14  summary judgment to defendant on grounds that it was entitled to DMCA safe harbor, not

15  addressing merits of vicarious claim, and entering judgment in favor of defendant).

16  **V.    IO HAS FAILED TO SUBMIT EVIDENCE TO ESTABLISH THE ESSENTIAL
         ELEMENTS OF ITS CLAIMS AND ITS MOTION FOR SUMMARY JUDGMENT**

17  **MUST BE DENIED.**

18       The party moving for summary judgment has the initial burden of establishing that there is

19  "no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law."

20  Fed. R. Civ. P. 56(c); *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 951 (9th Cir. 1978) ("[The]

21  burden of establishing that there is no genuine issue of material fact lies initially with the moving

22  party and resolution of all doubts should be in favor of the party opposing the motion.").   To

23  warrant summary judgment, a plaintiff must present evidence affirmatively showing that no

24  reasonable jury could find for the non-moving party for *all* essential elements of its case.  *Miller v.

25  Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006).  Where, as here, the moving party fails

26  to carry its initial burden of production, the opposing party has no obligation to produce anything.

27  *Nissan Fire & Marine Ins. Co. v. Gritz Cos.*, 210 F.3d 1099, 1102-1103 (9th Cir. 2000).  Inferences

28

1  drawn from any evidence produced must be viewed in a light most favorable to the nonmoving

2  party. *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992); *accord Addisu*

3  *v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000) ("Reasonable doubts as to the existence of

4  material factual issues are resolved against the moving  parties and inferences are drawn in the light

5  most favorable to the non-moving party.").

6      Here, Io has moved for summary judgment on its claims of direct, vicarious, and contributory

7  copyright infringement, and must establish all of the essential elements of those claims in order to be

8  entitled to summary judgment.  Io has not, and cannot, meet this burden.

9      **A.     Io has Failed to Produce Sufficient Evidence of Copying of its Alleged Works**

10      As a threshold matter, to establish the elements of its claims for either direct or indirect

11  copyright infringement, Io must meet its burden to show that copying of its works took place.  Io has

12  failed to meet its burden.

13      Copying can be proved by (1) direct evidence of copying or by (2) evidence of access to a

14  work and evidence of substantial similarity between the original and allegedly infringing work.

15  *Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996).  Here, Io seeks summary judgment on all of its

16  claims without bothering to introduce sufficient evidence that its alleged works were in fact copied,

17  or if so, how much of the works were copied.  Io's entire factual discussion of the alleged infringing

18  copies is in paragraphs 13, 14, and 15 of the Ruoff Declaration.  Io apparently now alleges that ten

19  works were infringed, Ruoff Decl. ¶¶ 13-15, but fails to support its claims that these works were in

20  fact copied, and has failed to produce either copies of the works it alleges were infringed, or of the

21  allegedly infrnging copies.  Regarding Io's alleged work *River Patrol,* for example, Mr. Ruoff

22  summarily states that he "located" a "portion" of that work on June 13, 2006.  *Id.* ¶ 13.  As

23  "evidence" that this video was copied, Mr. Ruoff submits only a copy of a Veoh Video Details Page

24  for a video titled "Military Men", and states that he "observed the large image in the upper left hand

25  corner playing as a streaming Flash video file."  *Id.* ¶ 13 & Exh. D.  Having failed to produce a copy

26  of the alleged work *River Patrol*, explain how or whether the "large image" of "Military Men" he

27  observed copied *River Patrol,* or how much of the infringing work the "portion" allegedly copied,

28

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

1    there is insufficient evidence for this Court to determine whether *River Patrol* was in fact copied.

2    Io's evidence of the other alleged infringements is even more paltry and deficient.  For

3    example, the extent of its "evidence" of copying of its alleged works *Don't Ask, Don't Tell, Detour,*

4    *Seamen, Heat, Island Guardian, and Boner,* is to state that "I similarly witnessed and documented

5    selections" from those works, and to attach video detail pages of still images with names like

6    "piss12", "piss4", "GWN-Short Series", and "Rough Sex", without explaining how these works

7    correlate to Io's alleged infringed works, or how much of the infringing work the "portion" allegedly

8    copied.  *Id.* ¶ 14 & Exh. E.  Io's evidence of copying of its remaining alleged works is even weaker

9    still, consisting of one or two pages of "frames" from video files that Veoh produced in discovery,

10   and to which Io acknowledges Veoh had terminated access on its own accord prior to Io's filing

11   suit.[9]  *Id.* ¶ 15 & Exh. F.

12   Io's purported evidence of copying is insufficient to determine whether and to what extent

13   any copying of its alleged works ever took place.  In *Seiler v. Lucasfilm, Ltd.*, 808 F.2d 1316, 1319

14   (9th Cir. 1986), the Ninth Circuit held that:

15   There can be no proof of 'substantial similarity' and thus of copyright infringement unless [the claimed] works are juxtaposed with [the allegedly infringing works] and their contents

16   compared.  Since the contents are material and must be proved, [Plaintiff] must either produce the original or show that it is unavailable through no fault of his own. . . .  The [best evidence rule] ensure[s] that proof of the infringement claim consists of the works alleged to

17   be infringed.

18   *Accord General Universal Sys., Inc. v. Lee*, 379 F.3d 131, 145-47 (5th Cir. 2004); *Bridgmon v.*

19   *Array Sys. Corp.*, 325 F.3d 572, 576-77 (5th Cir. 2003).  The Court should deny Io's motion for

20   summary judgment on this basis alone.  Courts even encumber a "non-moving [plaintiff]" with the

21   burden of proof in copyright cases to produce the alleged infringed and infringing products for

22   comparison purposes at the summary judgment stage."  *Berkla v. Corel Corp.*, 66 F. Supp. 2d 1129,

23   1139 (C.D. Cal. 1999) ("To the extent that Berkla has not presented his other infringed databases for

24   review, Corel is entitled to summary judgment."); *see generally Shaw v. Lindheim*, 919 F.2d 1353,

25   1355 (9th Cir. 1990) ("Summary judgment is not highly favored on questions of substantial

---

26   [9] Pursuant to a stipulation entered by this Court on April 26, 2007, Veoh produced to Io copies of

27   video files to which Veoh had terminated access prior to the filing of Io's lawsuit on June 23, 2006. *Joint Stipulation Regarding Responses to Plaintiffs' Document Requests and Maintenance of*

28   *Electronic Data* (Apr. 26, 2007) (docket no. 70).

1    similarity in copyright cases.").  Without any evidence of the works at issue, Io has failed to meet its

2    burden of production to prove copying and the Court has no means of assessing whether any

3    underlying infringement exists.

4        **B.    Veoh Does Not Engage in Direct Infringement**

5        Acknowledging that the relevant case law requires an internet service provider to act with the

6    requisite volition to be held directly liable for copyright infringement, Io apparently claims that

7    Veoh does so for four reasons: (1) because the Veoh system automatically copies and stores content

8    uploaded by users;[10] (2) because the user content uploaded to the Veoh system is automatically

9    "transcoded" into Flash format for viewing; (3) because the Veoh system automatically generates

10   "thumbnails" to assist in the location of user provided content; and (4) because Veoh's Terms of Use

11   required users to give Veoh permission to host user provided content.  None of these actions are

12   sufficient to establish the requisite volition for a finding of direct infringement, and to the extent Io

13   seeks to hold Veoh directly liable for the automated generation of thumbnails to assist users in

14   finding such content, Veoh is also protected by the fair use doctrine.

15        1.    <u>Veoh Does Not Act With the Requisite Volition To Be Held Liable for Direct</u>
16            <u>Infringement</u>

17        To establish direct copyright infringement, Plaintiff must not only show ownership of a valid

18   copyright, but also copying of elements of the work that are original.  *Feist Publ'ns, Inc. v. Rural*

19   *Telephone Serv. Co.*, 499 U.S. 340, 361 (1991); *Funky Films, Inc. v. Time Warner Entm't Co.*, 462

20   F.3d 1072, 1076 (9th Cir. 2006).  The "copying" that must be proved to establish direct infringement

21   involves more than mere automatic behavior; only volitional conduct can give rise to infringement.

22   *CoStar Group, Inc. v. LoopNet, Inc.*, 373 F.3d 544, 551 (4th Cir. 2004) (citing *Religious Tech. Ctr.*

23   *v. Netcom On-Line Commc'n Servs., Inc.*, 907 F. Supp. 1361 (N.D. Cal. 1995)); *Sega Enters. v.*

24   *Sabella*, No. C 93-04260, 1996 U.S. Dist. LEXIS 20470 (N.D. Cal. Dec. 18, 1996); *Parker v.*

25   *Google*, 422 F.Supp.2d 492, 497 (E.D. Pa. 2006), *aff'd by* No. 06-3074, 2007 U.S. App. LEXIS

26

27   _____
     [10] While Io argues that Veoh may, in very limited circumstances, upload content on behalf of certain
     partners, *see* Pl's. Mot. at 7, Io does not claim that Veoh ever itself uploaded the allegedly infringing
28   works at issue in this case, and so this is entirely irrelevant to Io's claims.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

1  16370, at *6-7 (3d Cir. July 10, 2007); *Field v. Google, Inc.*, 412 F. Supp. 2d 1106, 1115 (D. Nev.

2  2006); *Newborn v. Yahoo!, Inc.*, 391 F. Supp. 2d 181, 186 n.3 (D.D.C. 2005).

3      This means that for direct liability, the Copyright Act only inculpates "conduct by a person

4  who causes in some meaningful way an infringement." *CoStar*, 373 F.3d at 549. "[S]omething

5  more must be shown than mere ownership of a machine used by others to make illegal copies. There

6  must be actual infringing conduct with a nexus sufficiently close and causal to the illegal copying

7  that one could conclude that the machine owner himself trespassed on the exclusive domain of the

8  copyright owner." *Id.* at 550; *see also id.* at 549 (noting that the staple article of commerce doctrine

9  of *Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417, 442 (1984) eliminated strict liability for

10  copyright infringement when the maker of a device has constructive knowledge of purchasers

11  making infringing uses).

12      Therefore, websites that merely provide a forum where users may share content lack the

13  requisite volition to be held liable for direct infringement. For example, this Court's seminal *Netcom*

14  decision declined to impose direct liability for copying, distribution, and display on an Internet

15  service provider and a website operator for merely providing a forum for the sharing of content. 907

16  F. Supp. 1371-73, 1381-82. Plaintiff's proper remedy was against the offending users for direct

17  infringement, as the forum providers' actions were "automatic and indiscriminate" and could have

18  just as easily been "done" by any other number of forum providers *Id.* at 1372. Holding the forum

19  providers were not directly liable, this Court noted that "[b]illions of bits of data flow through the

20  Internet and are necessarily stored on servers throughout the network and it is thus practically

21  impossible to screen out infringing bits from noninfringing bits." *Id.* at 1372-73. In another case

22  before this Court, a bulletin board operator (the predecessor to a website operator) was not liable for

23  direct infringement when she did not upload or download the infringing content herself, even though

24  she encouraged infringement, knew it was going on (touting the "HUNDRED's of $$$$$$$$ worth

25  of games" for free), monitored it, and profited from it (by selling hardware to help her users make

26  copies of games that could be uploaded to her bulletin board). *Sega*, 1996 U.S. Dist. LEXIS 20470

27  at *7-8, *19-20 ("[W]hether Sabella knew her . . . users were infringing on Sega's copyright, or

28

DEFENDANT VEOH NETWORKS, INC.'S
OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
Case No. C 06-3926 HRL

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

1  encouraged them to do so, has no bearing on whether Sabella directly caused the copying to

2  occur.").  Likewise, in *Field*, Google's automatic provision of cached (backup) copies of third-party

3  webpages to its users at the users' direction did not give rise to direct liability.  412 F. Supp. 2d at

4  1115.  The court reasoned that "Google is passive," its "computers respond automatically" to

5  requests," and without a "request, the copy would not be created . . . and the alleged infringement at

6  issue in this case would not occur."  *Id.*

7         In *CoStar*, the Fourth Circuit adopted this Court's *Netcom* approach and analogized the

8  operators of content-hosting websites "to owner[s] of a traditional copying machine whose

9  customers pay a fixed amount per copy and operate the machine themselves to make copies.":

> When a customer duplicates an infringing work, the owner of the copy machine is not
> considered a direct infringer. Similarly, an ISP who owns an electronic facility that responds
> automatically to users' input is not a direct infringer. If the Copyright Act does not hold the
> owner of the copying machine liable as a direct infringer when its customer copies infringing
> material without knowledge of the owner, the ISP should not be found liable as a direct
> infringer when its facility is used by a subscriber to violate a copyright without intervening
> conduct of the ISP.

14  373 F.3d at 550; *accord Netcom*, 907 F. Supp. at 1368-70 (making the same analogy).  Therefore,

15  Loopnet, a website hosting and displaying user-submitted photographs and other information, was

16  not directly liable for its users uploading unauthorized photographs: it acted as mere conduit.  *Id.* at

17  551, 555 (Loopnet "provide[d] a system that automatically transmits users' material but is itself

18  totally indifferent to the material's content. In this way, it functions as does a traditional telephone

19  company when it transmits the contents of its users' conversations").  Even though Loopnet

20  reviewed each uploaded photograph prior to making those photographs public to ensure each in fact

21  depicted real estate and that each did not contain an obvious copyright notice, this practice did not

22  render its hosting a volitional act,  *id.* at 547, 556, and Loopnet was entitled to summary judgment.

23  *Id.* at 557.

24         Likewise here Io has failed to produce any evidence showing that Veoh acts with the

25  requisite volition to be held liable for direct infringement of Io's alleged works.  As in *CoStar*, Veoh

26  was a conduit for material submitted by its users.  Any automated processing of uploaded videos

27  does not alter this.  Operating with even less involvement than Loopnet, Veoh does not review files

28

9

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

1   prior to publication to determine whether they should or should not be published, and any such

2   review would be infeasible.[11]  The undisputed facts show only that Veoh employees made extremely

3   limited post-publication review of content on Veoh and, when appropriate, removed access to

4   content that violated Veoh's Terms of Use, including content suspected to be infringing.[12]

5         While Io cites *Playboy Enters. v. Webbworld*, 991 F. Supp. 543 (N.D. Tex. 1997) as support

6   for its direct infringement claim, the website operator in *Webbworld* faced direct liability because he

7   provided the infringing content himself.  Users of the website did not upload their own content;

8   rather, the website operator culled adult images from Internet newgroups.  *Id.* at 549.  The operator

9   "took affirmative steps" by "troll[ing] the Internet."  *Id.* at 552.  Veoh, on the other hand, did not

10  seek out Io's content.  Content on Veoh is uploaded by users or, in very limited circumstances not

11  relevant to this case, Veoh may upload content on behalf of certain partners.  Dunning Decl. ¶ 4;

12  Shapiro Dep. Tr. 33:17-19, 37:11-16.

13        Similarly, Io's reliance on *Playboy Enters. v. Hardenburgh*, 982 F. Supp. 503 (N.D. Ohio

14  1997) is misplaced.   In *Hardenburgh*, a bulletin board operator was found directly liable when the

15  operator encouraged users to upload content of all sorts to the system and manually reviewed each

16  file uploaded before making that file accessible to all users.  *Id.* at 513.  *Hardenburgh*, then, is

17  readily distinguished on its facts.  Veoh did not review videos prior to making them available to

18  users.  Transcript of March 26, 2007 Deposition of Ted Dunning ("Dunning Dep. Tr."), attached to

19  the Scherb Opp. Decl as Exh. F, 129:24 to 130:15; Papa Dep. Tr. (Day One) 35:6-8.  Moreover,

20  courts in this District, in *Sabella*, and the Fourth Circuit, in *CoStar*, have properly rejected the

21  *Hardenburgh* approach as inconsistent with copyright law.  In *Sabella*, the bulletin board operator

22  "monitored the uploading and downloading of games in great detail," 1996 U.S. Dist. LEXIS at *19,

23  but ultimately, this Court recognized that whether the operator knew of or encouraged infringement,

24  while possibly relevant to secondary liability, was irrelevant to direct liability.  It was error for

25  *Hardenburgh* to base its decision, as it clearly did, on encouragement and review.  *See CoStar*, 373

---

[11] Dunning Dep. Tr 129:24 to 130:15; Transcript of May 21, 2007 Deposition of Joseph Papa ("Papa Dep. Tr. (Day One)"), attached to the Scherb Opp. Decl. as Exhs. F & G, 35:6-8.
[12] Dunning Decl. ¶¶ 9-12; Dunning Dep. Tr. 125:6 to 126:16, 128:20-23, 136-37; Papa Dep. Tr. (Day Two) at 233:23 to 234:17.

10

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

1   F.3d at 549-550 (stating a similar principle); *see also* 3 Melville B. Nimmer & David Nimmer,

2   Nimmer on Copyright § 12B.01[A][1] (noting "*Netcom* remains the touchstone" while *Webbworld*,

3   *Hardenburgh*, and their predecessor, *Frena*, are "disapproved" by courts and by Congress through

4   legislative history).

5          Io makes the same error here, arguing that because Veoh "reviews or screens," Veoh goes

6   even further than the defendant in *Hardenburgh.*  Pl's. Mot. at 13-14.  In doing so, Io is wrong on

7   the law, and misrepresents the evidence to which it cites.  Even if Veoh reviewed files before

8   making them available, which the evidence shows it does not,[13] that would not subject Veoh to direct

9   liability.  Moreover, to support its claim that Veoh reviews files, Io argues that "[f]irst, Defendant

10  reviews or screens files by only accepting files which users agree to license to Defendant to be

11  exploited on to its system."  *Id.* The testimony Io cites does not support its argument.  Mr. Shapiro

12  and Mr. Papa merely state that users must register with Veoh to upload files and that during

13  registration, users agree that Veoh may make any uploaded videos available on Veoh.  Shapiro Dep.

14  Tr. 23:6-14; Papa Dep. Tr. 12:2-5, 31:14-19.  This is not review or screening.  Io also argues that

15  Veoh "reviews files to ensure they are video files capable of being shown on its system," citing to

16  Papa Dep. Tr. 12:10-17:21.  This statement is equally misleading, as the cited portions of Mr. Papa's

17  deposition only show that Veoh's system automatically rejected files that were not in fact video files.

18  The pre-publication "review" that Io attributes to Veoh is all part of the automatic and necessary

19  processing of video files, including that Veoh's computers automatically confirm that uploaded files

20  are in fact video files, that third-party software converts video files to Flash format, the automatic

21  generation of thumbnails from videos to help users locate videos and learn about their contents, and

22  the indexing of newly submitted videos.  Dunning Dep. Tr. 132-33 135, 138; Papa Dep. Tr. (Day

23  Two) at 155:5-6; Dunning Decl. ¶ 6; Dunning Opp. Decl. ¶¶ 3-5.

24         To the extent that Io claims Veoh "completes" its review of files after publication, Pl's. Mot

25  at 14, this statement is false and also a legal non-starter.  As noted, any comprehensive is infeasible,

26  and therefore Veoh cannot and does not have a policy of reviewing all files post-publication**.**  *See*

27

28  ---
    [13] Dunning Dep. Tr 129:24 to 130:15; Papa Dep. Tr. (Day One) 35:6-8.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

1    Dunning Dep. Tr 129:24 to 130:15; Papa Dep. Tr. (Day One) 35:6-8.  Veoh only engages in limited

2    *ad hoc* post-publication review.[14]  Papa Dep. Tr. (Day Two) at 203:4-15; Dunning Dep. Tr. 136-37.

3    As is clear from *CoStar* and *Sabella*, even pre-publication review does not give rise to volition, let

4    alone *ad hoc* post-publication review.

5         Io also refers to that fact that user content uploaded to Veoh's system is automatically

6    converted to Flash format, to support its argument that Veoh should be held directly liable.  Pl's.

7    Mot. at 14.  As Io acknowledges, users submit video files to Veoh in "multiple formats."  Pl's. Mot.

8    at 5; *cf.* Dunning Dep. Tr. 62:19 to 63:5 ("There are several hundred video formats at least.").  Veoh

9    utilizes widely-used third-party software that merely automatically encodes user-submitted videos

10   into Flash format for compatibility purposes, because the vast majority of Web users have software

11   that can play videos in the Flash format.  Dunning Opp. Decl. ¶ 3; Pl's. Mot. at 5 (noting it is

12   "technologically impractical" to show videos in a variety of formats and that Veoh encodes videos

13   into Flash because the "format is supported by most users' browsers").[15]  The conversion to Flash

14   format is an entirely automated process.  Dunning Decl. ¶ 6.  While Veoh pre-selects some encoding

15   specifications, such as frame rate, *see* Pl's. Mot. at 5, these specifications are simply default

16   parameters passed along to the encoding software, Dunning Opp. Decl. ¶ 3, and are the same for

17   each video.[16]  Content uploaded to any website will require automatic processing prior to

18   publication.  Automatic transcoding to Flash format is no more volitional than the processing

19   undertaken by the website operators in *CoStar*, *Netcom*, *Sabella*, or *Field* and *Parker*.

20        Similarly, Io's suggestion that Veoh's conduct should be considered volitional because its

21   storage of content is more than transitory, Plaintiff's Motion at 14, is misplaced.  The length of

22   storage has no relation to whether the copy placed in storage was placed there by one person or

---

[14] While Io notes that Veoh, for a brief period of time before disallowing adult content, checked "sexually explicit video files to determine if they should be tagged as "gay" or "straight," Pl's. Mot. at 4 (citing Papa Dep. Tr. (Day Two) at 240:6-245:17).  Io offers no evidence about the comprehensiveness of this review or evidence that such review conveyed any actual or constructive knowledge to Veoh of any infringement.

[15] *See also* Veoh Networks, Inc.'s Supplemental Responses to Interrogatory Nos. 6, 21, and 22, attached to the Scherb Decl. as Exh. E, at 3; Papa Dep. Tr. (Day One) at 124:3-17, 125:7-12 ("Adobe's Flash player has something like 98 percent penetration in the browser market, so a video formatted into Flash can be played by just about anybody on the Web."); Dunning Decl. ¶ 6.

[16] Papa Dep. Tr. 127:1-4, 128:16 to 129:9; Scherb Decl., Exh. E at 3.

12

another.  Moreover, *Netcom*, the only case Io cites to support this argument, dealt both with the temporary storage of content by an Internet Service Provider, but also the indefinite storage by the bulletin board operator.  *Netcom*, 907 F. Supp. at 1381-82.  Likewise, *CoStar* and *Sabella* both involved content residing on servers indefinitely.

The evidence shows that Veoh never directly copied, distributed,[17] performed, displayed, or made derivative works on its own volition.  While Io argues that Veoh is more like the defendants in *Webbworld* and *Hardenburgh*, then in *CoStar* or *Netcom*, the evidence supports the opposite conclusion.  The evidence fails to show that Veoh acted with the requisite volition and at the very least creates a question of fact requiring denial of Io's motion for summary judgment on liability for direct infringement.

2.    Veoh's Creation of Thumbnails is Also a Fair Use

To the extent Io seeks to hold Veoh directly liable for the automated generation of thumbnails to assist users in finding videos, Veoh is also protected by the fair use doctrine.  The Ninth Circuit has held that websites that generate thumbnail images from full-size works engage in fair use.  *Perfect 10, Inc. v. Amazon.com, Inc*., 487 F.3d 701, 725 (9th Cir. 2007) ("Google has put Perfect 10's thumbnail images (along with millions of other thumbnail images) to a use fundamentally different than the use intended by Perfect 10.  In doing so, Google has provided a significant benefit to the public."); *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 818-22 (9th Cir.2003) (holding Arriba's use of thumbnail images to help its users locate images on the Internet was a fair use that was transformative and a benefit to the public).  To evaluate whether a use is fair, courts

---

[17] Regardless of whether Veoh acts with the requisite volition, Veoh has not violated Io's distribution right because it does not distribute "copies."  Section 106(3) defines the "distribution" right as the right "to distribute *copies* . . . " 17 U.S.C. §106(3) (emphasis added).  "Copies," in turn, is a defined term and is specifically limited to "material objects."  17 U.S.C. § 101.  As Professor Nimmer has stated, "[i]nfringement of [the distribution right] requires an actual dissemination of either copies or phonorecords." 2 Nimmer on Copyright § 8.11[A], at 8-124.1.").  While the Ninth Circuit stated in dicta that "[t]he Supreme Court has indicated that in the electronic context, copies may be distributed electronically, *Perfect 10*, 487 F.3d at 718, courts that have considered the issue disagree.  *Agee v. Paramount Commc'ns, Inc.*, 59 F.3d 317 (2d Cir. 1995) (holding that the unauthorized satellite transmission of a copyrighted television program was a performance, not a distribution, because no material object changed hands); *Nat'l Car Rental Sys., Inc. v. Computer Assoc. Int'l, Inc.*, 991 F.2d 426, 434 (8th Cir. 1993) ("[E]ven with respect to computer software, the distribution right is only the right to distribute copies of the work.").

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

13

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

1    consider the equities in the context of four non-exclusive factors: "(1) the purpose and character of

2    the use, including whether such use is of a commercial nature or is for nonprofit educational

3    purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion

4    used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential

5    market for or value of the copyrighted work."  17 U.S.C. § 107.  Here, the first, third and fourth

6    factors weigh in favor of fair use, and the second factor weighs only slightly in favor of Io if at all.

7            The first factor weighs strongly in favor of a finding of fair use, as Veoh's use of thumbnails

8    is both highly transformative and non-commercial.  Both Google and Arriba created thumbnails that

9    were diminutive versions of full-size images and used those images to help users locate images and

10   determine whether they wanted to view the full-size images.  Veoh's thumbnails help users find

11   videos on Veoh's service, and provide users a quick idea, without watching a video, what that

12   video's contents will be like.  Dunning Opp. Decl. ¶ 5; Ruoff Decl. ¶¶ 13, 26 & Exhs. D, H.  When

13   users search for videos on Veoh, they enter keywords and Veoh returns a grid of videos, each

14   identified by a title and a thumbnail of a screenshot from that video.  If users click on a video's

15   thumbnail, they see a "Video Details Page" that contains the video and a link called "Video

16   Screencaps."  Clicking on the "Video Screencaps" links shows the user a set of 16 thumbnails of

17   screenshots from the video.  *Id.*  Thus, as in *Perfect 10* and *Kelly*, the thumbnails serve an

18   information location purpose.  Veoh's thumbnails are arguably even more transformative, because

19   the thumbnails are not merely diminutive versions of full-size images, but are still images extracted

20   from a different form of content: videos.  The thumbnails do not incorporate the entirety of any

21   video, but are only reduced-sized screenshots of a fraction of the screenshots that comprise any

22   given video.

23           There is also no evidence that Veoh's use of thumbnails was commercial.  During the period

24   at issue in this litigation, June 1-22 of 2006, there was no advertising on Veoh, and Veoh did not

25   charge users for viewing videos or for memberships or subscriptions.  Declaration of Joseph Papa

26   ("Papa Decl.")[18] ¶ 2.  In *Perfect 10* and in *Kelly*, the Ninth Circuit found fair use despite the fact that

27

28   ────────────────────
     [18] The Papa Decl. accompanied Veoh's own motion for summary judgment.

DEFENDANT VEOH NETWORKS, INC.'S
OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
Case No. C 06-3926 HRL

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

1   Google had advertising relationships, *Perfect 10*, 487 F.3d at 722, and when on appeal Arriba never

2   contested that its search engine had a limited commercial purpose, *Kelly*, 336 F.3d at 818.

3          Regarding the second factor, while Io's alleged works may be creative, they have been

4   previously published in a multitude of formats, including on DVDs, VHS tapes, and on Plaintiff's

5   internet sites.  Compl. ¶¶ 2, 8; Ruoff Dep. Tr. 96-98.  The same facts led the *Perfect 10* court to

6   conclude that the second fair use factor, the nature of the copyrighted work, weighed at best only

7   slightly in favor of the plaintiff and contributed little to the fair use calculus.  487 F.3d at 723, 725.

8   The same is true here.

9          The third factor weighs in favor of fair use.  In *Perfect 10* and *Kelly*, the Ninth Circuit held

10  that incorporating the entire contents of a full-size image in a thumbnail "was necessary . . . to allow

11  users to recognize the image and decide whether to pursue more information about the image or the

12  originating [website].  *Id.* at 724 (quoting *Kelly*, 336 F.3d at 821).  Otherwise, "it would be more

13  difficult to identify it, thereby reducing the usefulness of the visual search engine."  *Id.* (quoting

14  *Kelly*, 336 F.3d at 821).  Thus, the Ninth Circuit concluded that the "amount" factor favored neither

15  party.  *Id.*  In this case, Veoh uses far less of the original work: it merely uses a few thumbnails of

16  screenshots to identify an entire video.  A screenshot is "such an insignificant portion of the complex

17  copyrighted work as a whole" that in these circumstances, the "third factor will almost always weigh

18  against the [content owner]."  *Sony Computer Entm't Am., Inc. v. Bleem, LLC*, 214 F.3d 1022, 1028-

19  29 (9th Cir. 2000) (holding that use of screen shots of another's video game for advertising a video

20  game player is fair use).  Therefore, this factor also favors Veoh and fair use.

21         Finally, the fourth factor weighs in favor of fair use because Veoh's thumbnails have no

22  effect upon the potential market for or value of the copyrighted work.  Io sells videos and, for

23  promotional purposes, gives away DVDs of these videos and offers excerpts of those videos online

24  for free.  *See, e.g.*, Ruoff Dep. Tr. 35:21 ("We do allow trailers to be shown."); *id.* 44:8-10 ("We do

25  provide free copies of DVD's to reviewers in magazines, to be able to allow them to write reviews of

26  our films."); *id.* 90:7-9 (discussing Plaintiff's "free week of porn" promotion).  Veoh's thumbnails,

27  reduced-size screenshots from these and other videos, hardly compete.  "[B]ecause thumbnails were

28

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

1  not a substitute for the full-sized images, they did not harm the photographer's ability to sell or

2  license his full-sized images." *Perfect 10*, 487 F.3d at 724; *Kelly*, 336 F.3d at 821-22.  If thumbnails

3  do not harm the market for full-size images, they certainly do not harm the market for videos.  *Cf.*

4  *Bleem*, 214 F.3d at 1028-29 (screenshots are an insignificant portion of a larger audiovisual work).

5  Moreover, Io has provided no evidence of market harm from Veoh's thumbnails, and "market harm

6  cannot be presumed." *Perfect 10*, 487 F.3d at 724.

7      As three of the fair use factors weigh in favor of a finding of fair use, and one weighs at best

8  only slightly in Io's favor, the undisputed evidence establishes that Veoh's use of thumbnail images

9  to aid its users in locating videos is protected by the fair use doctrine.  At the very least, there is a

10  material issue of fact as to Veoh's protection by the doctrine that requires denial of Io's motion for

11  summary judgment.

12      **C.    Veoh is Not Secondarily Liable**

13      Io has also failed to marshal evidence sufficient to support the elements of its claims for

14  secondary copyright infringement.  Although the Copyright Act does not provide for secondary

15  liability, courts have imported into copyright law the doctrines of contributory and vicarious liability

16  from common law.  *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930-31

17  (2005).  Io's motion for summary judgment on its secondary liability claims fails both because it has

18  not met its burden to prove underlying acts of direct infringement by third parties, and because it has

19  failed to come forward with evidence to support the elements of its contributory and vicarious

20  infringement claims.

21          1.    Io has Failed to Submit Evidence of Underlying Infringement by Third Parties

22      "Secondary liability for copyright infringement does not exist in the absence of direct

23  infringement by a third party." *Perfect 10*, 487 F.3d at 725 (quoting *A&M Records, Inc. v. Napster,*

24  *Inc.*, 239 F.3d 1004, 1013 n.2 (9th Cir.2001)).  Plaintiff bears the burden of proving the existence of

25  third-parties' infringements and courts will not infer such infringement, even in the preliminary

26  injunction context where evidentiary burdens are arguably lessoned.  *Id.* at 726 ("There is no

27  evidence in the record directly establishing that users of Google's search engine have stored

28

16

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

infringing images on their computers, and the district court did not err in declining to infer the existence of such evidence.").  As discussed in Section V above, Io has produced insufficient evidence that any Veoh user made an infringing use of Io's works.  At the very least there is a material issue of fact as to whether any direct infringements exist.  This alone defeats Io's motion for summary judgment on its secondary claims.

> ### 2.    The Evidence Does Not Support Io's Claims of Contributory Infringement

Io has also failed to present evidence to support the elements of its contributory infringement claim.  "One infringes contributorily by intentionally inducing or encouraging direct infringement." *Grokster*, 545 U.S. at 930.   To be liable, one must act with knowledge of another's infringing activity and must induce, cause, or materially contribute to that conduct.  *Perfect 10*, 487 F.3d at 727.  In the "context of cyberspace," the Ninth Circuit has further refined this test.  *Id.* at 728.   A computer system operator can be held contributorily liable if it "has actual knowledge that specific infringing material is available using its system" but "fails to purge such material from the system." Id. (citing *Napster*, 239 F.3d at 1021-22; *Netcom*, 907 F. Supp. at 1375).  A computer system operator may also be liable for "distributing a product distributees use to infringe copyrights, if the product is not capable of 'substantial' or 'commercially significant' noninfringing uses."  *Id.* at 726 (citing *Sony*, 464 U.S. at 442).  Here, it is undisputed that Veoh had no actual knowledge of the specific allegedly infringing material, and Io has failed to present any evidence that would support constructive knowledge.  Moreover, because Veoh's website and software have substantial and commercially significant non-infringing uses, it is improper to impute knowledge to Veoh for the distribution of its products.  There is also no evidence at all to support that Veoh induced, caused, or materially contributed to the allegedly infringing conduct at issue in this case.

> ### a.    Veoh Had No Knowledge of the Specific Allegedly Infringing Material at Issue in this Case

In *Napster*, the Ninth Circuit "considered claims that the operator of an electronic file sharing system was contributorily liable for assisting individual users to swap copyrighted music files stored on their home computers with other users of the system."  *Perfect 10*, 487 F.3d at 728 (citing

---

17

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

1    *Napster*, 239 F.3d at 1011-13, 1019-22). The Ninth Circuit held Napster liable, but only because it

2    knew of "specific infringing material" and "failed to block access to such files." *Id.* (quoting

3    Napster, 239 F.3d at 1022).

4         It is undisputed that unlike Napster, Veoh had no actual knowledge of the specific alleged

5    infringements. [19] Io never provided Veoh with notice of any alleged infringements on Veoh's

6    system before filing this lawsuit, at which time Veoh had already disabled access to all pornographic

7    content, including any of Io's alleged material.[20]

8         There is also no evidence to support that Veoh had constructive knowledge of the alleged

9    infringing material. Io concedes that none of the alleged infringements it identified on Veoh

10   contained copyright notices, Scherb Decl., Exh. J, No. 58 (Pl's. Resp. to Def's. Second Set of

11   RFAs), and Io testified at deposition that none of the works identified Plaintiff in any way. Ruoff

12   Dep. Tr. 55:13-16 ("I don't remember seeing any reference to Titan Media within those audio-visual

13   works that I downloaded through Veoh."); *id.* at 56:19 to 57:13 (same for thumbnails).[21] Even if the

14   allegedly infringing works had copyright notices or attribution, such features are not evidence that a

15   work is unauthorized, only that someone claims the work. Knowledge of "specific infringing

16   material" is required. *Perfect 10*, 487 F.3d at 729. A content owner:

17        cannot know that any given image on the internet is infringing someone's copyright merely
          because the image contains a copyright notice. Google would need more information in order
18        to know whether the operator of that third-party website [posting the image] created the
          work, licensed its use or instead was illegally displaying an infringing copy of it.
19

20   *Perfect 10 v. Google, Inc.*, 416 F. Supp. 2d 828, 853 (C.D. Cal. 2006) (holding that Google was

21   therefore not a contributory infringer). As recently stated by the Ninth Circuit in analyzing the

22   related DMCA inquiry concerning constructive knowledge of infringements, even when "titillating"

---

23   [19] Even had Io provided Veoh with notice, which it did not, there may still have been a factual issue
24   preventing summary judgment. *See Netcom*, 907 F. Supp. at 1374-75 ("Since Netcom was given
     notice . . . there may be a question of fact.").
     [20] Scherb Decl., Exh. K, Nos. 21, 22, 24; *id.* Exh. L, No. 61 (Io admits it "never sent any notice to
25   Veoh regarding infringements of [its] copyrights, apart from communications in connection with this
     action"); Ruoff Dep. Tr. 57:19-23; 60:6 to 61:6.
26   [21] In its summary judgment motion Io identified one allegedly infringing work bearing the
     TitanMedia logo, but the logo does not appear in the video until more than four minutes into the
27   video. Ruoff Decl., Exh. F at 2 (showing the TitanMedia logo appearing at 4 minutes and 42
     seconds into the excerpt, as indicated in the top right corner of the printout).

28

18

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

1   photographs are described as "illegal" or "stolen," (which was not the case here) courts "do not place

2   the burden of determining whether [they] are actually illegal on the service provider." *Perfect 10,*

3   *Inc. v. CCBill LLC*, __ F.3d __, 2007 U.S. App. LEXIS 12508, at *19 (9th Cir. May 31, 2007)

4   (noting that photographs could have been untruthfully described as "stolen" to create buzz and

5   excitement only); *see also Corbis*, 351 F. Supp. 2d at 1107-08 ("The issue is not whether Amazon

6   had a general awareness that a particular type of item [celebrity photos,] may be easily infringed;"

7   rather, whether Amazon knew of specific infringements.").

8       Even if the allegedly infringing material had copyright notices or attribution, it is not feasible

9   for Veoh to review every user submission before it is made available on the Veoh system, Dunning

10  Dep. 129:17 to 130:15; Shapiro Dep. Tr. 84:16 to 85:1, and the law places no such burden on a

11  service provider, *CCBill*, 2007 U.S. App. LEXIS 12508, at *10 ("[A] service provider need not

12  affirmatively police its users."). The mere ability to review does not render a service provider

13  contributorily liable. As recently stated by another court considering this issue:

14          Nor does Google obtain actual knowledge of infringement as a result of its alleged
            monitoring practices. . . . [M]erely because Google may have reserved the right to monitor

15          its AdSense partners does not mean that it could thereby discern whether the images served
            by those websites were subject to copyright. Only upon receiving proper notice of alleged

16          infringement can Google determine whether a given AdSense partner has violated the terms
            of Google's AdSense Program Policies.

17  *Perfect 10*, 416 F. Supp. 2d at 854; *cf. Netcom*, 907 F. Supp. at 1375 n.21 ("A policy and practice of

18  acting to stop postings where there is inadequate knowledge of infringement in no way creates a

19  higher standard of care under the Copyright Act as to subsequent claims of user infringement.").

20      To the extent Veoh reviewed videos on an *ad hoc* basis after publication, its review was

21  limited and could not confer knowledge of infringement. As Io points out, reviewers largely would

22  catch and correct improperly rated or mis-categorized adult material. Pl's. Mot. at 4 (citing Papa

23  Dep. Tr. (Day Two) 203:4-15); *see also supra* n.14. Employees would do this by reviewing

24  metadata submitted with each video and the thumbnails associated with the video. Papa Dep. Tr.

25  50:15-17. Io misleadingly refers to this as "filtering" on page 8 of its motion. Papa Dep. Tr. (Day

26  One) 113:9-24. The cited deposition testimony and other evidence only demonstrates that such

27  review was *ad hoc* and largely accomplished by Veoh employees as they spot checked videos

28

DEFENDANT VEOH NETWORKS, INC.'S
OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
Case No. C 06-3926 HRL

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

1  appearing in prominent places on the website, such as the home page or on a featured video list.[22]

2  Dunning Dep. Tr. 136-37; *see generally* Papa Dep. Tr. (Day Two) 233:23 to 234:17.

3      Io's argument that there were "red flags" that would, as a matter of law, confer constructive

4  knowledge of infringement on Veoh (Pl's Mot. for Summary Judgment at 28) fails.  First, Io cannot

5  establish "red flags" because its works were "professional" looking.  Service providers are not

6  required to draw such broad generalizations about content; they need only respond when aware of

7  specific infringements.  *Perfect 10*, 487 F.3d at 729; *cf. Corbis*, 351 F. Supp. 2d at 1107-08 ("The

8  issue is not whether Amazon had a general awareness that a particular type of item [celebrity

9  photos,] may be easily infringed;" rather, whether Amazon knew of specific infringements.").

10  Moreover, the allegedly infringing works in this case were hardly "blatant" infringements in terms of

11  labeling and length as Io claims.  Io has admitted that nearly all of the allegedly infringing works

12  were less than a minute in length, and the majority of these were less than about six seconds in

13  length.  Scherb Opp. Decl., Exh. D, (Pl's. Resp. to Def's. Third Set of Requests for Admissions,

14  Nos. 65-78).

15      Io's remaining arguments for knowledge equally lack merit.  Its citation of 18 U.S.C. § 2257

16  and claim that Veoh failed to comply with the section's labeling requirement, Pl's. Mot. at 29, are

17  irrelevant.  Section 2257 has nothing to do with imputed knowledge, or copyright law for that

18  matter, and is irrelevant to this case.[23]  Further, Io's suggestion that its copyright registrations

19  somehow put Veoh on notice of the *alleged infringements* is baseless.  Pl's. Mot. at 29-30.  The only

20

21  _____

[22] Sometimes employees also categorized videos they saw as "featured", meaning the video may
22  receive more prominent placement on the Veoh website.  Pl's. Mot. at 9 (citing Papa Depo.173:14-
174:6).  Io does not offer any evidence how Veoh employees "featuring" a video results in
23  knowledge of infringement, and does not claim that any allegedly infringing works were ever
featured.
24  [23] 18 U.S.C. § 2257 is a statue that requires the maintenance of certain records in connection with the
*creation* of adult content.  It is plain on the face of the statute that Section 2257's reporting
25  requirements apply only to one who "produces" sexually explicit conduct, and would not apply to
Veoh.  18 U.S.C. § 2257(a).  "Produces . . . ***does not*** include mere distribution or any other activity
26  which does not involve hiring, contracting for managing, or otherwise arranging for the participation
of the performers depicted."  18 U.S.C. § 2257(h)(3) (emphasis added); *see also Sundance Assocs.,*
27  *Inc. v. Reno*, 139 F.3d 804, 807-08, 810-11 (10th Cir. 1998) (invalidating Attorney General's
regulation that attempted to broaden the definition of "produces").  Veoh has never produced adult
28  content.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

1   case cited by Io to support this proposition, *Saenger Org. v. Nationwide Ins. Licensing Assoc.*, 119

2   F.3d 55, 66 (1st Cir. 1997), holds only that a copyright registration can, in limited circumstances,

3   give constructive notice as to the *ownership* of a copyright, not that a work is or is not infringing.

4   Plaintiff's citation to 17 U.S.C. § 205(c) is similarly flawed.  It only states that "[r]ecordation of a

5   document in the Copyright Office gives all persons constructive notice of the facts stated in the

6   recorded document."  Copyright registrations alone cannot provide notice of infringements.

7               b.      Whenever Aware of Infringements, Veoh Removed Them, and In No
                        Way Contributed to or Induced Alleged Infringement
8

9           There is no dispute that Veoh, when aware of infringing content, acted expeditiously to

10  remove or disable access to the material.  Dunning Decl. ¶¶ 9-10.  As to infringements alleged in this

11  case, it is undisputed that Veoh had no knowledge or awareness that Io claimed they were infringing

12  until this lawsuit was filed, at which time they had already been removed from Veoh along with all

13  other adult content.

14          Io's weak argument for a finding of material contribution rests entirely on the fact that Veoh,

15  like Napster, maintains a centralized index of content available through Veoh.  Plaintiff's Motion at

16  27.  As explained by the court in *Perfect 10, Napster* held that "'if a computer system operator learns

17  of specific infringing material available on his system and fails to purge such material from the

18  system, the operator knows of and contributes to direct infringement."  *Perfect 10*, 487 F.3d at __.

19  Accordingly, it was "[b]ecause Napster knew of the availability of infringing music files, assisted

20  users in accessing such files, and failed to block access to such files, we concluded that Napster

21  materially contributed to infringement."  *Id.*  Unlike in *Napster*, Io has offered no evidence that that

22  Veoh became aware of specific infringing material and failed to act, and here, Veoh uses a

23  centralized index in order to terminate access to infringing content upon notice.

24          Finally, after the Supreme Court's decision in *Grokster*, it is clear that "[o]ne infringes

25  contributorily by intentionally inducing or encouraging direct infringement," and that intent is

26  required for contributory infringement.  545 U.S. at 930.  Io has presented no evidence that Veoh

27  had intent to infringe Io's copyrights.  Veoh has certainly never advocated or encouraged

28

21

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

1    infringement of any kind. To the contrary, Veoh has always had a policy of excluding infringing

2    content, Papa Decl. ¶¶ 5-9, and has always acted expeditiously to remove any allegedly infringing

3    works upon notice and, as appropriate, to terminate the user account associated with the infringing

4    work if the user account had previously been subject to a copyright removal, Dunning Decl. ¶¶ 9-10.

5    There is no evidence to the contrary.

6                          c.     Veoh's Website and Software are Capable of Substantial Non-
                                  Infringing Uses
7

8          Nor is Veoh contributorily liable for the design of its video sharing tools.  Since the Supreme

9    Court's decision in *Sony,* 464 U.S. at 439, copyright law does not permit contributory infringement

10   claims against those providing a technology that, though used for both infringing and non-infringing

11   purposes, is "capable of substantial non-infringing uses," *id.* at 442.  The Ninth Circuit recently

12   explained that Google "cannot be held liable for contributory infringement solely because the design

13   of its search engine facilitates such infringement . . . [or] because it did not develop technology that

14   would enable its search engine to automatically avoid infringing images." *Perfect 10,* 487 F.3d at

15   727 (citing *Grokster*, 545 U.S. at 931-32, 939 n.2).   Io admits that Veoh is capable of non-infringing

16   uses.  Scherb Opp. Decl., Exh. A, No. 8.  That Veoh is capable of *substantial* non-infringing uses, is

17   evidenced by the existence on Veoh of content from respected, major content providers such as CBS

18   and Turner, Shapiro Dep. Tr. 33:17-19, 37:11-16, and by the minimal number of alleged

19   infringements compared to the large number of videos available on Veoh.  Dunning Opp. Decl. ¶ 6.

20   To the extent Io attempts to impute knowledge for purposes of a finding of contributory liability

21   based upon Veoh's design alone, this effort fails.

22         Io has failed to present evidence to support its claim of contributory infringement.

23                   3.     Veoh is Not Vicariously Liable

24         Io has also failed to present evidence sufficient to support its claim of vicarious infringement.

25   Vicarious liability for copyright infringement arises when a defendant enjoys a direct financial

26   benefit from another's infringing activity and has the right and ability to supervise the infringing

27   activity. *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004).  Veoh has neither the right and

28

1    ability to control the infringing activity nor the requisite direct financial relationship with alleged

2    infringers.

3              a.    Veoh Lacks the Right and Ability to Control the Allegedly Infringing
                       Activity
4

5         Veoh has neither the right nor the ability to control the allegedly infringing activity.  First,

6    Veoh does not have the ability to control the infringing activity.  As already noted, it is not feasible

7    for Veoh to review every user submission before it is made available on the Veoh system.  Dunning

8    Dep. 129:17 to 130:15; Shapiro Dep. Tr. 84:16 to 85:1.  Similarly, the Ninth Circuit recently held

9    that "[w]thout image-recognition technology, Google lacks the practical ability to police the

10   infringing activities of third-party websites."  *Perfect 10*, 487 F.3d at 731. Because Veoh lacks the

11   ability to comprehensively review videos for infringements – video comparisons being even more

12   challenging than image comparisons – Veoh does not have the ability to control infringing content.

13        This distinguishes Veoh from Napster, which "had the ability to identify and police

14   infringing conduct by searching its index for song titles" upon notice from the music industry.  *Id.*

15   Moreover, the Ninth Circuit stated that for "Napster to function effectively . . . file names must

16   reasonably or roughly correspond to the material contained in the files, otherwise no user could ever

17   locate any desired music."  *Napster*, 239 F.3d at 1023.  There is no evidence in the record that the

18   allegedly infringing works in this case generally had titles resembling the titles of Io's works, and in

19   fact the record shows that the allegedly infringing material had titles that did not match the actual

20   titles of Io's alleged works. *Compare* Ruoff Decl. ¶¶ 13-14 (listing works claimed), *with id.* Exhs. D

21   & E (showing titles of allegedly infringing works).  In any event, Io never provided Veoh with the

22   names of any titles for which to search.

23        Moreover, Napster "could have escaped liability by exercising its "reserved right to police

24   . . . to its fullest extent," even despite its central index.  *Napster*, 239 F.3d at 1024.  The mere ability

25   to control a central index does not give rise to the ability to control infringing content.  *Perfect 10*

26   held that "Google's ability to control its own index, search results, and webpages does not give

27   Google the right to control the infringing acts of third parties even though that ability would allow

28

Winston & Strawn LLP
101 California Street
San Francisco, CA  94111-5894

23

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

1   Google to affect those infringing acts to some degree." *Perfect 10 v. Visa Int'l Serv. Ass'n*, __ F.3d

2   __, 2007 WL 1892885, at *10 (9th Cir. July 3, 2007) (citing *Perfect 10*, 487 F.3d at 731).  Here,

3   Veoh responded to notices of infringement.  Dunning Decl. ¶¶ 9-10.  Veoh's central index and its

4   ability to terminate access to certain files only evidences an ability to control access to videos, not an

5   ability to identify and terminate *infringing videos*.  As noted, it is infeasible for Veoh to review all

6   content and even when it reviews content, it is not in a position to determine infringing from non-

7   infringing works.  *See CCBill LLC*, 2007 U.S. App. LEXIS 12508, at *19 (noting that photographs

8   could have been untruthfully described as "stolen" to create buzz and excitement only).  Only with

9   notice from content owners can Veoh identify and block infringements.

10      This fact is underscored by the fact that Io itself initially identified a work, *Prowl 3*, as

11  having been infringed, and then changed its mind months later and conceded that it had not been

12  infringed after all.  Scherb Decl. ¶ 3.  *Compare* Scherb Decl., Exh. H, No. 1 (the original

13  identification of alleged infringements), *with* Scherb Decl., Exh. I, No. 1 (the supplemental

14  response).  If Io could not itself accurately identify whether user submitted works infringed Io's

15  works, it is unclear how Veoh could possibly have had the ability to do so.

16      Veoh also lacks the right to control the allegedly infringing activity.  The "right and ability to

17  control," as it is understood in the common law of vicarious copyright infringement, arises from a

18  special relationship between an infringer and another.  Vicarious liability was an outgrowth of

19  respondeat superior, which would make an employer liable for certain acts of his employee.

20  *Fonovisa, Inc. v. Cherry Auction, Inc.,* 76 F.3d 259, 261-62 (9th Cir. 1996).  Today, relationships

21  such as the employer-employee relationship and the principal-agent relationship and those like them

22  may give rise to a right and ability to control, *see, e.g.*, *In re Aimster Copyright Litig.*, 334 F.3d 643,

23  654 (7th Cir. 2003), but other relationships do not.  The Second Circuit has distinguished landlord-

24  tenant relationships, which do not create vicarious liability, from employer-employee relationships,

25  which can give rise to such liability, and it used those examples as ends of a spectrum on which to

26  place, and by which to evaluate, challenged conduct.  *Shapiro, Bernstein and Co. v. H.L. Green Co.,*

27

28

DEFENDANT VEOH NETWORKS, INC.'S
OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
Case No. C 06-3926 HRL

1    316 F.2d 304, 307-308 (2d Cir. 1963). Courts should be wary of finding the right and ability to

2    control in other contexts.

3        There are no facts suggesting any relationship between Veoh and alleged direct infringers

4    equivalent to an employer-employee or principal-agent relationship with respect to the alleged

5    infringing activity that would give Veoh the right and ability to control the alleged infringers'

6    conduct.  Veoh and the alleged infringers are only connected in the loosest sense as anyone can

7    become a Veoh user. The main contact Veoh might have with an infringing user is to terminate that

8    user's account. Veoh goes to great lengths to remove infringing content from its service upon notice

9    and to protect the rights of content providers. It does not, however, have a relationship with alleged

10   direct infringers that gives it a right to control their infringing conduct, nor does it have the ability,

11   absent notice, to determine which of the multitude of videos on Veoh may be infringing. Veoh had

12   neither the right nor ability to control the allegedly infringing activity in this case.

13       Io argues that there is a significant licensing relationship between Veoh and its users in that

14   users who upload videos to Veoh grant Veoh a "nonexclusive" license to make those videos "freely

15   available" on Veoh and referring to Veoh's Terms of Use. Pl's. Mot. at 23. First, Io cites no law in

16   support of its claim. Second, a mere contractual relationship between an alleged direct infringer and

17   an alleged vicarious infringer does not give rise to the right to control. *See, e.g., Adobe Sys. Inc. v.*

18   *Canus Productions, Inc.*, 173 F. Supp. 2d 1044, 1047, 1053 (C.D. Cal. 2001) (denying summary

19   judgment to plaintiff despite fact that the alleged direct infringer contracted with defendant for a

20   booth at its trade show). Third, the provision of Veoh's Terms of Use that Io cites merely asks users

21   to acknowledge that any user provided content may be made freely available on Veoh. Pl's. Mot. at

22   23 (citing Veoh's Terms of Use).

23             b.    Veoh Obtained No Financial Benefit Directly Attributable to the
                     Allegedly Infringing Activity
24

25       Although the Court need not reach the financial benefit inquiry because Veoh does not have

26   the right and ability to control the alleged infringing activity, it is also clear from the evidence that

27   that Veoh does not receive a financial benefit directly attributable to the allegedly infringing activity.

28

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

1  Direct financial benefit exists only where the availability of infringing material "acts as a draw for

2  customers" and there is a "causal relationship between the infringing activity and any financial

3  benefit." *Ellison*, 357 F.3d at 1077, 1079.  Thus, in *Ellison*, the existence of infringing content on

4  one of America Online's Internet services was not a "draw" because it was a part of a larger service

5  with non-infringing content and there was no evidence that users joined the service for the illegal

6  content or left the service when the content was removed.  *Id.* at 1079.  However, where Napster

7  operated a file sharing service devoted to the traffic of unauthorized audio works and refused to

8  respond to takedown notices concerning those works, those works were a "draw." *A&M Records,*

9  *Inc. v. Napster, Inc.*, 239 F.3d 1004, 1023 (9th Cir. 2001).

10        *Ellison* affirmed the grant of summary judgment to a copyright defendant, AOL, on the issue

11  of vicarious infringement.  357 F.3d at 1079.  The court noted "the question before us is whether

12  there is a triable issue of a material fact regarding whether AOL received a direct financial benefit

13  from the copyright infringement."  It evaluated the evidence, a document stating the importance of

14  attracting and retaining subscribers for business and documents showing that many subscribers

15  inquired about AOL blocking access to the USENET group at issue, and concluded: "This evidence

16  is hardly compelling." *Id.* ("The record lacks evidence that AOL attracted or retained subscriptions

17  because of the infringement or lost subscriptions because of AOL's eventual obstruction of the

18  infringement.").

19        While Io argues that *adult material* was once a draw to Veoh, Pl's. Mot. at 20-21, adult

20  content does not equate to infringing content, and there is simply no evidence that Veoh ever

21  attempted to capitalize on providing *infringing material*.  Io notes some number of Veoh users who

22  complained that Veoh removed adult content; however, in the words of *Ellison*, this evidence is

23  hardly compelling that infringement was a draw.  357 F.3d at 1079 (affirming summary judgment

24  for a copyright defendant despite complaints from users who lost access to a USENET group).

25  Neither in *Ellison* nor in this case was there evidence of complaints over lost *infringing* content.

26        Moreover, at the time of the alleged infringements in this case and at all times while Veoh

27  permitted adult content, Veoh generated no revenue from its service, and no direct financial benefit

28

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

1  directly attributable to the alleged infringing activity.  Only months after this lawsuit began and after

2  Veoh had banned adult content did Veoh realize any advertising revenue from its service.  Papa

3  Decl. ¶ 2.  In any event, there can be no direct financial benefit "where the infringer makes the same

4  kind of payment as non-infringing users."  *Cf.* H.R. Rep. No. 105-551 Part 2, at 54 (describing what

5  would not be a direct financial benefit in the DMCA context).

6         The undisputed evidence shows that both before and after Veoh changed its adult content

7  policy, infringing content has never been a draw for Veoh.  To the contrary, Veoh has always

8  prohibited infringing content and has acted expeditiously to remove it when put on notice.  These

9  actions make clear that Veoh has no interest in using infringing content as a draw.  *Adobe Sys. Inc.*

10  *v. Canus Productions, Inc.*, 173 F. Supp. 2d 1044, 1052 (C.D. Cal. 2001) (denying summary

11  judgment to plaintiff when defendant stated its reputation would be harmed by existence of

12  infringing content at its trade shows and when defendant "expelled" vendors for "providing

13  adulterated and infringing products").  While the evidence indicates that Veoh does not derive a

14  financial benefit directly attributable to infringing conduct, at a bare minimum there is an issue of

15  fact on this issue and summary judgment for Io is improper.

16  **VI.    CONCLUSION**

17         Io has moved for summary judgment as to liability on its direct and indirect claims for

18  copyright infringement without evidence to support the elements of those claims.  The Court should

19  deny Io's motion because Io has not and cannot establish the essential elements of its claims, and as

20  moot in the face of Veoh's entitlement to DMCA safe harbor.

21

22  Dated:  August 14, 2007                    WINSTON & STRAWN, LLP

23

24                                            By:___/s/_____
                                                  Michael S. Elkin
25                                                Jennifer A. Golinveaux
                                                  Matthew A. Scherb
26                                                Attorneys for Defendant
                                                  VEOH NETWORKS, INC.

27

28

SF:179476.16