1                UNITED STATES DISTRICT COURT

2              NORTHERN DISTRICT OF CALIFORNIA

3                   SAN JOSE DIVISION

4

5

6   IO GROUP, INC., a California )
    Corporation,                 )
7                                )
                    Plaintiff,   )
8                                )
       vs.                       )Case No. C-06-3926(HRL)
9                                )
    Veoh NETWORKS, Inc., a       )
10  California Corporation,      )
                                 )
11                  Defendant.   )
    _____)
12

13

14                HIGHLY CONFIDENTIAL

15            DEPOSITION OF JOSEPH PAPA

16                     VOLUME I

17             SAN DIEGO, CALIFORNIA

18                  MAY 21, 2007

19

20

21

22  REPORTED BY:  NICOLE R. HARNISH, CSR No. 13101

23

24

25

1           UNITED STATES DISTRICT COURT

2         NORTHERN DISTRICT OF CALIFORNIA

3               SAN JOSE DIVISION

4

5

6  IO GROUP, INC., a California )
   Corporation,                )
7                              )
                    Plaintiff, )
8                              )
      vs.                      )Case No. C-06-3926(HRL)
9                              )
   Veoh NETWORKS, Inc., a      )
10 California Corporation,      )
                               )
11                  Defendant. )
   _____)
12

13

14

15           DEPOSITION OF JOSEPH PAPA,

16  taken by the Plaintiff, commencing at the hour of

17  9:00 a.m., on Monday, May 21, 2007, at

18  530 B Street, Suite 350, San Diego, California,

19  before Nicole R. Harnish, Certified Shorthand

20  Reporter in and for the State of California.

21

22

23

24

25

```
 1  APPEARANCES:

 2

 3      For the Plaintiff:

 4          GILL SPERLEIN
            GENERAL COUNSEL
 5          TITAN MEDIA.COM
            BY:  GILL SPERLEIN, ESQ.
 6          584 Castro Street, Suite 849
            San Francisco, California  94114
 7

 8      For the Defendant:

 9          WINSTON & STRAWN
            BY:  JENNIFER A. GOLINVEAUX, ESQ.
10          101 California Street
            San Francisco, California  94111
11

12
         Also Present:  Keith Ruoff
13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    I N D E X

 2  WITNESS:  JOSEPH PAPA

 3

 4  EXAMINATION:                              Page

 5  By Mr. Sperlein                             5

 6

 7

 8                  E X H I B I T S

 9  MARKED FOR IDENTIFICATION

10  1    Document from the wiki site            65

11  2    Document from the wiki site           119

12  3    Various e-mail correspondence         121

13

14      Questions Witness Instructed Not To Answer
                     Page     Line
15                    54       25
                      98       24
16                   105        5

17

18

19

20

21

22

23

24

25
```

1  you should cancel video files that are blatant

2  examples of copyright infringement?

3        MS. GOLINVEAUX:  Object to the extent that

4  it would require you to disclose attorney-client

5  communications.  I would instruct you not to answer.

6        THE WITNESS:  Who's Veoh in this context?

7  BY MR. SPERLEIN:

8     Q.  Veoh is any employee or director of Veoh.

9     A.  I am not going to answer.

10    Q.  Have you instructed any employee below

11 you -- first off, do you have any employees that

12 report to you directly?

13    A.  Yes.

14    Q.  Have you instructed any of those employees

15 to remove video files if they appear to be blatantly

16 copyrighted material?

17    A.  I have advised all employees as to our DMCA

18 policy.  And I have let them know that Josh Metz --

19 who is our chief counsel -- is available if they have

20 questions as to policy.

21    Q.  Prior to Josh Metz coming to Veoh as your

22 chief counsel, did you ever instruct any other

23 employee to remove video files that they thought were

24 blatantly copyright infringement?

25    A.  I can't recall a specific conversation, but

1    I, NICOLE R. HARNISH, Certified Shorthand Reporter

2    for the State of California, do hereby certify:

3

4    That the witness in the foregoing deposition was by

5    me first duly sworn to testify to the truth, the

6    whole truth and nothing but the truth in the

7    foregoing cause; that the deposition was taken by me

8    in machine shorthand and later transcribed into

9    typewriting, under my direction, and that the

10   foregoing contains a true record of the testimony of

11   the witness.

12

13   Dated: This 8th day of June 2007

14   at San Diego, California.

15

16

17

18   _____

19   NICOLE R. HARNISH

20   C.S.R. NO. 13101

21

22

23

24

25

1              UNITED STATES DISTRICT COURT

2            NORTHERN DISTRICT OF CALIFORNIA

3                  SAN JOSE DIVISION

4

5

6  IO GROUP, INC., a California )
   Corporation,                 )
7                               )
                   Plaintiff,   )
8                               )
     vs.                        )Case No. C-06-3926(HRL)
9                               )
   VEOH NETWORKS, Inc., a       )
10 California Corporation,      )
                               )
11                 Defendant.   )
   _____)
12

13

14

15          DEPOSITION OF JOSEPH PAPA,

16 taken by the Plaintiff, commencing at the hour of

17 8:10 p.m., on Tuesday, May 22, 2007, at

18 530 B Street, Suite 350, San Diego, California,

19 before Nicole R. Harnish, Certified Shorthand

20 Reporter in and for the State of California.

21

22

23

24

25

```
 1  APPEARANCES:

 2

 3       For the Plaintiff:

 4            GILL SPERLEIN
              GENERAL COUNSEL
 5            TITAN MEDIA.COM
              BY:  GILL SPERLEIN, ESQ.
 6            584 Castro Street, Suite 849
              San Francisco, California  94114
 7

 8       For the Defendant:

 9            WINSTON & STRAWN
              BY:  JENNIFER A. GOLINVEAUX, ESQ.
10            101 California Street
              San Francisco, California  94111
11

12
          Also Present:  Keith Ruoff
13

14

15

16

17

18

19

20

21

22

23

24

25
```

139

```
 1                    I N D E X

 2  WITNESS:  JOSEPH PAPA

 3

 4  EXAMINATION:                              Page

 5  By Mr. Sperlein                            5

 6

 7

 8

 9                  E X H I B I T S

10  MARKED FOR IDENTIFICATION

11  11    Printouts from Veoh Forum section      201

12  12    E-mail correspondence from Joseph Papa  206
          to Brad Seraphin, Engineering, dated
13        6/21/2006

14  13    Various e-mail correspondence          232

15  14    Section of the Wiki                    233

16  15    E-mail correspondence from Dmitry Shapiro 236
          to John MacDonald, Ted Meisel,
17        Francis Costello, Todd Leeloy,
          dated 12/23/2006
18
    16    E-mail correspondence from Joseph Papa  239
19        to Ted Dunning, dated 6/9/2006

20  17    E-mail correspondence from Joseph Papa  240
          to Ted Dunning, dated 5/23/2006
21

22        Questions Witness Instructed Not To Answer
                        Page     Line
23                      174       13
                        176       20
24                      180       18
                        182       24
25                      184       18
```

140

1  BY MR. SPERLEIN:

2      Q.   And did you take such measures?

3      A.   No.

4      Q.   Can you tell me what measures were

5  discussed that were a possible way of dissuading

6  people from uploading child porn?

7      A.   We discussed a stern warning presented on

8  the upload page.

9      Q.   Was that stern warning ever added to the

10  Veoh system upload page?

11      A.   No.

12      Q.   Did you discuss any other measures?

13      A.   Not that I recall.

14      Q.   Are you aware of any additional

15  documentation that could have been required that

16  would help eliminate child pornography from appearing

17  on the Veoh system?

18          MS. GOLINVEAUX:   Object to form of the

19  question.  Calls for speculation.

20          THE WITNESS:   What would constitute

21  "documentation"?

22  BY MR. SPERLEIN:

23      Q.   Any written piece of paper with further

24  information from the uploader.

25          MS. GOLINVEAUX:   Would you read back the

191

1    to the removal of adult video files from the Veoh

2    system and the concurrent change in Veoh policy

3    regarding adult material, if an individual who was an

4    employee of Veoh encountered a video file which they

5    deemed to be obviously copyright infringement, was

6    that -- were those employees authorized to delete the

7    video file from the Veoh system?

8        MS. GOLINVEAUX:  Object to the form of the

9    question.

10       THE WITNESS:  Veoh employees have always

11   been bound by the DMCA policy.

12   BY MR. SPERLEIN:

13       Q.   Does that policy include permission for a

14   Veoh employee to delete a video file that that

15   employee deems to be a blatant copyright violation?

16       MS. GOLINVEAUX:  Object to the form of the

17   question.  Calls for legal conclusion.

18       THE WITNESS:  Employees don't delete files.

19   BY MR. SPERLEIN:

20       Q.   Can you clarify that last statement?  When

21   you say "Employees don't delete files," is there

22   another term that more accurately describes how an

23   employee prevents a video file from being viewed by

24   users on the system?

25       A.   Canceled files are not removed from the

1  file system, but are not accessible.

2      Q.   Okay.  So prior to Veoh's change in its

3  policy regarding sexually explicit material being

4  available on the Veoh system, were employees

5  permitted to cancel files which the employee, in his

6  own estimation, deemed to be obviously acts of

7  copyright infringement?

8           MS. GOLINVEAUX:  Object to the form of the

9  question.

10           THE WITNESS:  Yes.

11  BY RIGHT1:

12      Q.   I am handing you an exhibit that the court

13  reporter will mark as Exhibit No. 12.  Will you take

14  a look at that and tell me when you have had a chance

15  to review it?

16           (Plaintiff's Exhibit No. 12 was marked.)

17           THE WITNESS:  Okay.  I have had a chance.

18  BY MR. SPERLEIN:

19      Q.   Okay.  This is Defendant's Exhibit Document

20  Production No. 00026.  It is an e-mail from

21  Joe Papa to Brad Seraphin and Engineering, copied to

22  Mr. Costello; and it is dated June 21st, 2006.  The

23  subject line is "porn watch schedule."

24           Are you familiar with this document?

25      A.   Yes.

1  clarify.

2          Does Veoh require a DMCA notification from

3  the owner of the copyrighted work or the registered

4  agent before Veoh will cancel the file from the

5  system?

6          MS. GOLINVEAUX:  I will object to the form

7  of the question.

8          THE WITNESS:  Do we require that?

9  BY MR. SPERLEIN:

10      Q.   Yes.

11      A.   Meaning that that is the only circumstance

12  under which that would happen?

13      Q.   That's correct.

14      A.   No.

15      Q.   And we are speaking right now currently, or

16  did you answer the question regarding your current

17  policy?

18      A.   Current policy.

19      Q.   Going back to June 21st, '06, and prior to

20  that, would Veoh take down video files if they were

21  identified as possibly containing copyrighted

22  material even if that notification did not come from

23  the owner or agent of the owner of the content?

24      A.   No.

25      Q.   Has any person or entity ever requested

222

1  that Veoh prevent their copyrighted works from

2  appearing on the Veoh system?

3          MS. GOLINVEAUX:  Object to the form of the

4  question.

5          THE WITNESS:  I am not aware of that

6  request from anyone outside work.

7  BY MR. SPERLEIN:

8      Q.   Are you familiar with whether NBC Universal

9  provided Veoh a list of its titles with the requests

10  that Veoh prevent those works from appearing on the

11  Veoh system?

12      A.   I am not aware of any requests to prevent

13  works from appearing on the system.

14      Q.   With your understanding of how the Veoh

15  system operates, if an individual or company were to

16  provide a list of works that it wished to have Veoh

17  prevent from appearing on the Veoh system, could Veoh

18  comply with that request?

19          MR. GOLINVEAUX:  Object to the form of the

20  question.

21          THE WITNESS:  Can you clarify "works"?

22  BY MR. SPERLEIN:

23      Q.   Titles.  For example, if someone gave you a

24  list of titles of movies and requested that Veoh

25  prohibit those movies from appearing on the Veoh

223

1  system, could Veoh take measures to prevent such

2  movies from appearing on the system?

3       A.   No.

4       Q.   And why is it that Veoh could not take such

5  measures?

6       A.   If we were given titles and a video was of

7  the content that was expressed, but not titled as

8  such, then we would have no way of preventing that

9  from appearing.

10      Q.   If a company contacted Veoh and said we

11 don't want any work that has our trademark or our

12 company's name on the video work, could Veoh take

13 measures to prevent video files with that company's

14 name or trademark from appearing on the system?

15           MS. GOLINVEAUX:  I will object as outside

16 the scope of the 30B6 notice.

17           THE WITNESS:  I am not aware of a

18 technology that would allow us to detect any piece of

19 content that would indicate a trademark.

20 BY MR. SPERLEIN:

21      Q.   Could a human looking at a video file

22 determine if it had a particular trademark on it?

23           MS. GOLINVEAUX:  Object to the form of the

24 question.  Calls for legal conclusion.

25           THE WITNESS:  If the human was trained, I

224

1  suppose they could.

2  BY MR. SPERLEIN:

3      Q.   If 20th Century Fox said to Veoh we would

4  like you to prevent any video file that has "20th

5  Century Fox" opening screen generally associated with

6  our movie and showed you what that screen looked like

7  could Veoh review files and prevent that from

8  appearing on the Veoh system?

9          MS. GOLINVEAUX:   Object to the form of the

10 question.

11         THE WITNESS:  Can you clarify "review"?

12 BY MR. SPERLEIN:

13     Q.   To look at with human eyes.

14     A.   Human eyes.  That sounds plausible, yes.

15     Q.   But as far as you know, no company has

16 requested that Veoh review video files in advance and

17 prevent them from appearing on the Veoh network

18 regardless of whether it was identified by title or

19 brand; is that accurate?

20     A.   I am not aware of any outside requests to

21 prevent content from appearing on Veoh.

22     Q.   If a producer were to provide Veoh with an

23 actual copy of the content of its content and

24 requested that Veoh prevent any of that content from

25 appearing on the Veoh system, is there any way that

225

1  Veoh could comply with that request currently?

2          MS. GOLINVEAUX:  Object to the form of the

3  question.

4          THE WITNESS:  Currently we could prevent an

5  exact duplicate of the content provider, bit for bit,

6  precisely the same file.

7  BY MR. SPERLEIN:

8      Q.   And could you do that -- strike that.

9          When you say "bit for bit," would that --

10  would such a file generate a hash I.D. that would be

11  identical to a hash I.D. that is on your system?  Is

12  that how your able to do it, or is there some other

13  method?

14     A.   If there was a file that produced the same

15  hash I.D., then we could consider it the same file.

16     Q.   But in order for a video file to do that it

17  would have to be an exact replica of a file that has

18  previously been on the Veoh network; is that

19  accurate?

20     A.   You are asking me about a hypothetical case

21  where a third-party gives us a sample file?

22     Q.   Right.

23     A.   So the sample file would have to be bit for

24  bit exactly the same file as the hypothetically

25  uploaded file that we would match against it.

226

1      Q.   So if someone came along and tried to

2   upload a video file, but removed the first three

3   seconds from that video file, you would no longer be

4   able to automatically, through a technological

5   process, identify that file as one that has been --

6   that has requested to be filtered out; is that

7   accurate?

8      A.   That is accurate.

9      Q.   If Titan Media, prior to June 1st, 2006,

10  had given Veoh a list of titles that were in its

11  collection and requested that Veoh prevent those

12  titles from being -- appearing on the Veoh system,

13  could Veoh have complied with that request?

14          MS. GOLINVEAUX:  Object to the form of the

15  question.  And calls for speculation.

16          THE WITNESS:  If we had received a DMCA

17  compliant take down request, we could have taken down

18  the content.  And at that time that is all we could

19  have done.

20  BY MR. SPERLEIN:

21      Q.   So proactively if Veoh [sic] had given you

22  a list of title, could Veoh have filtered metadata

23  based on those titles to make sure that at least the

24  titles were not entered into the Veoh system?

25          MS. GOLINVEAUX:  Object to the form of the

1  question.

2          THE WITNESS:  Titles would not be

3  sufficient information for us to do a takedown.

4  BY MR. SPERLEIN:

5      Q.   Okay.  I am not asking about a takedown

6  process.  I'm asking about a request that Veoh take

7  measures in advance to prevent material from

8  appearing on the Veoh system.

9          And specifically, right now, I am asking

10  only about metadata, understanding that people may

11  sometimes put incorrect metadata titles in various

12  content.  But my question is if Io Group, which does

13  business as Titan Media, had sent a list of titles to

14  Veoh and said "These titles all belong to us.  If you

15  see any of these titles listed as the title

16  associated with a video file on your system, we ask

17  that you cancel that video file," could Veoh have

18  done that?

19      A.   From a technological perspective could we

20  have searched for each one of those titles and

21  canceled any results that came back as part of that

22  search?

23      Q.   Yes.  Answer that.

24      A.   Yes.

25      Q.   Could Veoh have prevented those words from

1  ever being entered in as a title in the first

2  instance?

3      A.   We could have prevented those words from

4  being entered into a title.

5      Q.   And if Titan Media had sent copies of all

6  of its movies to Veoh, is there any process that Veoh

7  could have taken in order to prevent any portion of

8  those movies from being uploaded onto the Veoh

9  system?

10          MS. GOLINVEAUX:  Object to the form of the

11  question.

12          THE WITNESS:  Any portion?

13  BY RIGHT1:

14      Q.   Any portion.

15      A.   No.

16      Q.   If Io Group had sent that same copies of

17  all of its movies on to Veoh and asked that no

18  portion of those movies be permitted to be uploaded

19  onto the Veoh system, could Veoh have had employees

20  review all of those movies and then based on that

21  human review somehow review incoming material to

22  prevent it from going onto the Veoh system?

23          MS. GOLINVEAUX:  Would you please read back

24  the question?

25          (Record read.)

1          MS. GOLINVEAUX:  Object to the form of the

2    question.  And calls for speculation.

3          THE WITNESS:  As I understand the question

4    it is asking if we could have had humans reviewing

5    all uploaded content and screen out the content that

6    was provided by Titan Media; is that correct?

7    BY MR. SPERLEIN:

8        Q.   That's correct.

9        A.   It was never considered feasible to do

10   that.  And at that time we would not have been able

11   to do that.

12       Q.   Are there any actions that Io Group could

13   have taken prior to June 21st, 2006, to prevent its

14   works from appearing on the Veoh system?

15         MS. GOLINVEAUX:  Object to the form of the

16   question.

17         THE WITNESS:  All content that meets the

18   technology requirements is made active on the system,

19   and I can't think of a way, at that time, that it

20   could have been prevented.

21   BY MR. SPERLEIN:

22       Q.   And is that different today?

23       A.   The one change that we have implemented

24   today that we do not have on that date is if a bit

25   for bit copy is republished and it has already been

230

1  canceled, then the new version, again, bit for bit,

2  precisely the same, goes into a canceled state

3  immediately.

4        Q.    When did that technology go online?

5        A.    I was going to say winter.  I am really not

6  sure specifically.  So late 2006, early 2007.

7        Q.    Prior to June -- end of June 2006, was

8  there any way to prevent Io Group works from

9  appearing on the Veoh system other than Io Group

10  reviewing the Veoh Web site and contacting Veoh with

11  a request that the -- that any works posted on the

12  site be removed?

13        A.    We would have responded to a -- and we did

14  respond to DMCA compliant takedown request.  So in

15  the hypothetical case, when we had been contacted we

16  could have responded.

17        Q.    Let me just ask you one question here.

18  Okay.  This is Exhibit No. 13.  And this is marked

19  with Defendant's Exhibit -- I'm sorry, Document

20  Production No. 000781.  And it appears to be an

21  e-mail.

22              I want to specifically direct your

23  attention to the middle of the page.  There's a

24  paragraph that reads "This would have caused me" --

25  I'm sorry -- "This could have been caused by me

231

1    taking down his copyrighted work, Ted responding to a

2    DMCA request, our Russian helper being over

3    aggressive, or other."

4         This was written by Brad Seraphin.  Do you

5    have any idea who or what he might be referring to by

6    "our Russian helper being over aggressive"?

7         (Plaintiff's Exhibit No. 13 was marked.)

8         MS. GOLINVEAUX:  I would point out for the

9    record that this appears to be a multipage e-mail and

10   counsel has given us one page and it appears to fall

11   in the middle of the multipage e-mail.

12        THE WITNESS:  There is a member of our

13   St. Petersburg team that works with Brad and Sabine.

14   BY MR. SPERLEIN:

15       Q.   Do you know his name?

16       A.   His first name is Gleb.  I believe it is

17   Trubanov.

18       Q.   That is fine.  Thank you.

19            And do you know if Gleb Trubanov was given

20   the task of identifying material to be removed from

21   the website for any reason?

22       A.   If Gleb finds content that violates our

23   terms of service, he can take it down.

24       Q.   Does that include material that appears to

25   be a blatant example of copyright infringement?

```
 1            MS. GOLINVEAUX:  Object to the form of the

 2   question.

 3            THE WITNESS:  If any employee encounters

 4   blatantly copyrighted material, they can take it down

 5   in compliance with our DMCA policy.

 6   BY MR. SPERLEIN:

 7       Q.   I have handed you Exhibit 14 -- 006417 it

 8   is marked "highly confidential.  Attorneys eyes

 9   only," but by stipulation of counsel it's been

10   reduced designation to confidential.  Will you take a

11   few minutes to look over the document.

12            (Plaintiff's Exhibit No. 14 was marked.)

13            THE WITNESS:  Yes.  Okay.

14   BY MR. SPERLEIN:

15       Q.   And is this a section of wiki?

16       A.   Yes.

17       Q.   And I was told if I say "the wiki," I will

18   sound like George Bush saying "the Internets."

19   That's why I was asking yesterday.

20            Under "copyright violations," do you see

21   that section?

22       A.   Yes.

23       Q.   It says "Veoh always responds immediately

24   to DMCA compliant takedown notices.  These will

25   generally come from Dmitry or Francis.  In addition,
```

1    I, NICOLE R. HARNISH, Certified Shorthand Reporter

2    for the State of California, do hereby certify:

3

4    That the witness in the foregoing deposition was by

5    me first duly sworn to testify to the truth, the

6    whole truth and nothing but the truth in the

7    foregoing cause; that the deposition was taken by me

8    in machine shorthand and later transcribed into

9    typewriting, under my direction, and that the

10   foregoing contains a true record of the testimony of

11   the witness.

12

13   Dated:  This *12th* day of _____ *June* _____ .

14   at San Diego, California.

15

16

17

18                              _NRH_.

19                              NICOLE R. HARNISH

20                              C.S.R. NO. 13101

21

22

23

24

25